# Farrington *versus* Woodward.

1. W. and F., while in partnership, borrowed certain wooden patterns from V., through an agent, H., H. agreeing, by the terms of the receipt given, to return them to V. "immediately after using them ;" there was no evidence that W. ever knew of the terms of this receipt, but he knew the patterns had been borrowed from V. and were to be returned to him. Afterwards W. bought F.'s interest in the business, and covenanted to meet all the liabilities and perform all the contracts of the firm. W. retained H. in his employ and carried on the business, but did not return the patterns as agreed upon ; V. obtained a judgment against F., in New York, for breach of the agreement to return the patterns, and F. brought this action to recover from W. for a breach of the articles of dissolution. The court below charged that if at the time of the dissolution, W. was ignorant of the liability of the firm to return the patterns "immediately after using them," F. could not recover : *Held* to be error, and that the question of W.'s means of knowledge of the terms of the agreement with V. should have been left to the jury.

2. W., while on the witness stand, was permitted to testify in his own behalf that, under the contract of dissolution, he had fulfilled all the contracts and obligations of the firm of which he had any knowledge at the time of its dissolution : *Held* to be error, as it substantially amounted to testifying that F. had no cause of action.

3. Depositions of C., who had been counsel for F. in the suit in New York, were offered by F. and in part rejected. Among the parts rejected were the following : C. testified that suit had been begun in New York against F., a trial had and judgment recovered against F. for a certain sum and costs : *Held*, that this was admissible in evidence, if it did not contradict the exemplifica-

[Farrington *v.* Woodward.]

tion of the New York proceedings, but that being merely cumulative proof of the latter its rejection was harmless to F.

4. C. further testified that he had advised F., that if W. had attended at the trial in New York and testified, F. would have won his case: *Held*, that this evidence was properly rejected as being too vague.

5. C. also testified that he had received a letter from W., in which, according to witness's recollection, W. stated facts which, if proved by W. at the trial in New York, would have entitled F. to have had the complaint against him there dismissed: *Held*, that this evidence was properly rejected as being too vague to be of value.

June 5th 1876.   Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.   WILLIAMS, J., absent.

Error to the Court of Common Pleas of *Lycoming county :* Of May Term 1876, No. 120.

Covenant by Thomas B. Farrington against John A. Woodward, to recover damages for a breach of an agreement for dissolution of partnership between the parties.

On July 25th 1866, Woodward and Farrington formed a partnership for the purpose of manufacturing water-pipe, &c., at Williamsport.   Soon afterwards, the firm, by Gideon Hurlburt, their foreman, obtained some wooden patterns at Lockport, New York, from one Van Voorhis, upon a written agreement signed by Hurlburt as agent for the firm to "return them immediately after using."   These patterns were at once taken to Williamsport and from there to Elmira, New York, to be used there, and were left in the possession of one Stevens for the firm.   After they had been used they remained with Stevens, subject to the firm's order, till after the dissolution.   On March 3d 1868, the firm of Woodward & Farrington was dissolved ; Woodward bought the business and covenanted "to pay or satisfy all the debts of the late firm and carry out all of its contracts, engagements or obligations and save and keep harmless the said Farrington of and from the payment of any debts of said firm and save and keep harmless the said Farrington from the non-fulfilment of any of said contracts, engagements or obligations."   At the time of the dissolution, Hurlburt was in the employ of the firm ; he continued for sometime thereafter in the employ of Woodward.   At that time no steps had been taken to return the patterns to the owner.

In December 1868 suit was begun against Farrington by Van Voorhis in Rochester, New York, for his failure to return the patterns as agreed upon.   Farrington immediately notified Woodward of this action, and called upon him to defend it.   Woodward took no steps to defend the action, but he at once sent the patterns to Rochester and tendered them to Van Voorhis, who refused to receive them. Farrington did not know of this fact till it was too late to take depositions to prove it at the trial, and Woodward refused to go to Rochester to testify as to it.   Judgment was recovered against Farrington in the action in New York for $100.19 and $134.01 costs,

[Farrington v. Woodward.]

and this action was brought by him to recover from Woodward the amount of the judgment and costs, and his expenses, counsel fees, &c., in the litigation, amounting in all to $789.25.

At the trial Farrington testified, in regard to Woodward's knowledge of the agreement to return the patterns to Van Voorhis, substantially that soon after the firm was formed the witness and Woodward had agreed to send Hurlburt to borrow these patterns from Van Voorhis; that Hurlburt obtained them after some difficulty, and returning to Williamsport told Woodward and Farrington the results of his efforts, and informed them of the receipt which he had given for them as agent for the firm; that the patterns were then taken to Williamsport and from there to Elmira, where Woodward saw them and made arrangements for their use. Further, that at the time of the dissolution he (the witness) called Woodward's attention to the fact that the patterns belonged to Van Voorhis, and requested him to attend to returning them, so that there might be no trouble.

Woodward testified among other things that he had never known the contents of the receipt given for the patterns; but admitted that when they were brought to Williamsport, when they were taken from there to Elmira, and when they were at Elmira he knew that they did not belong to the firm, but had been borrowed from some one by the name, as witness thought, of Van Voorhis, an attorney-at-law.

In rebuttal a letter was put in evidence, written by Woodward at Farrington's request to De Lancy Crittenden, the attorney for Farrington at Rochester, after the suit was begun there by Van Voorhis, in which he recounted at length the borrowing of the patterns from Van Voorhis, and stated that they had been at once taken to Elmira, for use by the firm, and were, when the letter was written, on storage in Elmira, ready for Van Voorhis whenever he should call for them.

For the plaintiff, the deposition of Crittenden was offered as evidence in chief; the important parts of it are as follows:—

Answer to third interrogatory. "I appeared for him (Farrington) in an action in the Supreme Court of the state of New York, in which John Van Voorhis was plaintiff and said Farrington sole defendant. [It was commenced by service of summons and order of arrest on Mr. Farrington, by the sheriff of Monroe county, on the 4th day of December 1868. A defence was interposed and a trial had before a referee, and on the 8th of June 1870, a judgment for debt was directed for $100.19, with costs, against defendant. Judgment was entered the same day for the above amount, and $134.01 costs against the defendant]."

Answer to the tenth interrogatory. ["I advised Farrington that if Woodward (the defendant) had attended upon the trial and testified as to the joint interest in the patterns, which were the subject of that action, the weight of evidence would have been with

[Farrington *v.* Woodward.]

Farrington (the defendant in that action), and that the complaint would have been dismissed.] I had, according to my present recollection, a correspondence by letter with Mr. Woodward, the defendant in this action [in which he stated the testimony which he would be able to give upon that trial, and the facts within his knowledge. I have carefully examined my papers to find this correspondence, but I am unable to find any of his letters. My present recollection is that he stated in those letters in substance that he would corroborate Mr. Farrington in his statements, and that the facts as stated by him would have been sufficient, if testified to by him, to have entitled the defendant to a dismissal of the complaint with costs.] [My register shows that on the 12th of July 1870, the debt, interest and costs were paid by Mr. Farrington, being then $235.55, and the judgment satisfied of record."]

Under the defendant's objection the parts given in brackets were rejected and the plaintiff excepted.

While the defendant, Woodward, was upon the stand, his counsel proposed to ask him whether or not, under the contract of dissolution and in pursuance of its terms, he did or did not fulfil all the contracts and obligations of the firm of which he had any knowledge at the time of the dissolution.

The plaintiff's counsel objected to the question on the ground that it was too indefinite ; that the witness might state what contracts he did satisfy, but it was incompetent for him to state in general terms that he satisfied all the contracts.

This offer was sustained, under objection by the plaintiff, and an exception noted to the ruling.

The witness replied to the question, " I did, sir, so far as I have any knowledge."

The court below (Gamble, P. J.) was of opinion that the case was ruled by Case *v.* Cushman, 3 W. & S. 544, the syllabus of which was made a part of the charge, and further charged as follows :—

["We instruct you that this case depends upon this question of fact, and that is submitted to you as a question of fact, whether at the date of this article of dissolution of partnership between Woodward & Farrington, Mr. Woodward was ignorant of any liability existing on the part of the firm of Woodward & Farrington to return these patterns immediately. If so, then no damages can be recovered from him for a breach of contract that he was wholly ignorant of at that time."]

Verdict for the defendant and judgment thereon, to which Farrington took this writ of error. The errors assigned were, among others, to the rejection of those parts of De Lancy Crittenden's testimony given in brackets ; to the admission of Woodward's testimony that he had fulfilled all the obligations of the firm of which he had knowledge, according to the offer set forth, and to that portion of the charge given above.

[Farrington v. Woodward.]

*J. W. Maynard, J. Eutermarks* and *J. O. Parker*, for plaintiff in error.—Crittenden's testimony was admissible to show that Farrington did not let the action against him go by default, to show that it was lost by Woodward's negligence in not attending to testify and as affecting the question of damages in this case by showing Woodward's *animus*. The question put to Woodward was leading; it allowed him to put a construction upon his own covenant. Case *v.* Cushman is not in point; that was not an action between partners; there Case had no means of knowing of the existence of the account of Gascoigne & Co. Here Woodward knew the patterns were borrowed from Van Voorhis and could at any time have learned from him or from Hurlburt, who remained in his employ for a year, the terms of the loan.

*Armstrong & Linn* and *H. C. Parsons*, for the defendant in error.—Crittenden's testimony as to the contents of the lost letter from Woodward was inadmissible: Dennis *v.* Barber, 6 S. & R. 420; Coxe *v.* England, 15 P. F. Smith 223. Case *v.* Cushman governs this case; Woodward undertook only the liabilities as to which he had knowledge; it was fairly left to the jury to say whether he knew of this liability at the time of dissolution.

Mr. Justice WOODWARD delivered the opinion of the court, October 9th 1876.

Portions of the deposition of De Lancy Crittenden which were rejected by the court below were admissible, if they did not contradict the record of the suit of Van Voorhis against Farrington in the Supreme Court of New York. The importance of the testimony, however, is not apparent. The statement of the witness in answering the third interrogatory, that the suit was commenced by the service of a summons and an order of arrest, and that a defence was interposed and a trial had before a referee, resulting in a judgment, and his statement in answering the tenth interrogatory, that his registry showed the payment by Farrington of the debt, interest and costs recovered against him, amounting to $235.55, on the 12th of July 1870, could only have been cumulative proof of what must have been abundantly made out by the exemplification of the New York judgment. While, therefore, as corroborative and perhaps explanatory of the record, the statements were evidence under the authority of such cases as Carmony *v.* Hoober, 5 Barr 310, and Stark *v.* Fuller, 6 Wright 320, no injury could have been caused to the plaintiff by their rejection, and the error would not be significant enough to require on that ground that the judgment should be reversed.

The rejection of Mr. Crittenden's recital of the opinion he had given Farrington as to the effect Woodward's testimony would have had in the New York suit, and of his statement of the contents of

[Farrington *v.* Woodward.]

Woodward's letters, was right. In both instances the witness gave not facts communicated to him, but his recollection of the impressions produced on his own mind as conclusions from those facts. His conversation with Farrington was in Woodward's absence. He said in reference to the letters: "My present recollection is that he [Woodward] stated in those letters, in substance, that he would corroborate Mr. Farrington in his statements, and that the facts as stated by him would have been sufficient, if testified to by him, to have entitled the defendant to a dismissal of the complaint with costs." This testimony could tend to prove nothing and was so vague as to be valueless.

There is more substance in the second error assigned by the plaintiff. The defendant was permitted to answer the question, "whether or not, under the contract of dissolution, and in pursuance of its terms, he did or did not fulfil all the contracts and obligations of the firm of which he had any knowledge at the time of the dissolution." The objection urged on the argument that the question was leading, was not made at the trial and is not entitled to be considered here. But it involved an answer covering the entire issue in the case. The agreement dissolving the partnership and transferring the assets to the defendant, had stipulated that "the said Woodward is to pay or satisfy all of the debts of the late firm, and carry out all of its contracts, engagements or obligations, and save and keep harmless the said Farrington of and from the payment of any debts of said firm, and save and keep harmless the said Farrington of and from the non-fulfilment of any of said contracts, engagements or obligations." Now the patterns out of which this controversy has arisen had been borrowed of Van Voorhis for the firm. The law created the obligation to restore them. They were transferred to the possession and control of the defendant with the other partnership effects at the time of the dissolution. It will be shown hereafter that he could not have been ignorant that the patterns had been borrowed and not bought. Under his agreement with the plaintiff he was required to discharge every obligation the law laid on the partnership. Whether the duty to return these patterns to Van Voorhis was such an obligation, it was for the court and jury to ascertain upon the evidence before them, and was a question which could not legitimately be left to rest on the opinion a party to the contract might be found to entertain. A statement by the defendant of what acts he had done in pursuance of the agreement would have been unobjectionable, but the answer he was permitted to give was entirely too comprehensive. He was allowed, in substance, to say that he did not legally owe the duty to enforce which the suit was brought, and that the plaintiff had no cause of action.

All the remaining assignments of error develop, with greater or less directness, the main point on which the controversy in the court below was made to turn. Relying on the authority of Case

v. Cushman, 3 W: & S. 544, the court charged: "This case depends on this question of fact, whether at the date of this article of dissolution of partnership between Woodward & Farrington, Mr. Woodward was ignorant of any liability existing on the part of the firm of Woodward & Farrington to return these patterns immediately. If so, then no damages can be recovered from him for a breach of contract that he was wholly ignorant of at that time." It is observable that no question as to the defendant's means of knowledge, and no facts bearing on that question were submitted to the jury. Hurlburt, the foreman and agent of the firm, received from the Holly Manufacturing Company, on the order of J. Van Voorhis, Jr., twenty-five wooden patterns, belonging to a header, bander and turner for manufacturing wood pipe, on the 15th of August 1866. The receipt of Hurlburt stipulated that the property should " be returned immediately after using." The patterns were delivered in Williamsport about the 22d of August, and were taken to Elmira by the plaintiff and Hurlburt the same day. The next day the defendant went to Elmira, and the parties met in the foundry, where it was agreed the castings should be made. According to the recollection of the defendant himself, the patterns were then there. The firm was dissolved on the 3d of March 1868, the defendant remaining in the management of the business and in possession of the castings manufactured from the patterns, and Hurlburt, the foreman, remaining in his employment for a year after the dissolution. Van Voorhis brought suit against the present plaintiff on the 4th of December 1868. Up to that time the patterns appear to have been left in the hands of Stevens, at his foundry in Elmira.

In the opinion of the court below, the want of proof of express knowledge by the defendant of the terms of Hurlburt's receipt to the Holly Manufacturing Company, was fatal to the plaintiff's case. But it is not possible that the defendant could have been deceived or misled. While he was on the stand as a witness he was asked, " When the patterns were here, when they were at Elmira, and when you agreed at Elmira to have the work done at the shops there, did you not know that they were not yours, and belonged to a man of whom your agent had borrowed them ?" He answered : " I knew that they were not ours, and I knew that Mr. Farrington had borrowed them of some one. I presume he said Mr. Van Voorhis. I don't recollect now. I recollect it was an attorney, and was surprised that it was an attorney who owned them." It is to be borne in mind that after the 3d of March 1868, the defendant was in possession of the entire firm property, and was controlling its entire business. The patterns had been used and the castings made at the time of the dissolution. The fact that the property had been borrowed was admittedly known, and the defendant was perfectly aware that it had never been owned by the firm, and did not belong to him. It was his duty to see that it was surrendered to the true

owner, who had a right to its possession. But it is insisted there was no affirmative proof that he knew the contents of Hurlburt's receipt. Perhaps not, but whose fault was that? Hurlburt was in his service, and he had the means and opportunity of obtaining all the knowledge which Hurlburt possessed. It is true nothing appeared in the papers or books of the firm disclosing the terms on which the patterns were held. But the defendant held them. He knew not only that they were not his, but that Van Voorhis owned them. He knew also that he owed some duty regarding them. If he was in doubt, he was bound to use the means at hand to ascertain exactly what that duty was. It has often been held that anything that would put a prudent man on inquiry is equivalent to notice: Churcher *v*. Guernsey, 3 Wright 84; Twitchell *v*. McMurtrie, 27 P. F. Smith 383. If in point of fact, the defendant was unaware of the terms Hurlburt had made, his ignorance was the consequence of his own want of precaution. The plaintiff ought certainly not to be required to pay without the chance of redress the penalty of the defendant's forgetfulness or neglect.

Case *v*. Cushman was not a precedent to govern the rights of these parties. Cushman and one Volz had been partners, and on dissolution Volz assigned his whole estate to Case in trust for the payment of his debts. The partnership books containing an account of the firm debts were delivered to Case, and some months afterwards Cushman assigned to him all his interest in the effects of the firm, Case agreeing to secure Cushman against " the payment of any debts, or the part payment of any debts due by the late firm of U. Cushman & Co." Subsequently J. & C. Gascoigne brought a suit against the firm for the balance of an account, and recovered judgment for $335.84, which Cushman paid, and for the amount of which he commenced an action against Case. It appeared that the last item of the account of the Gascoignes, amounting to $143, had not been entered in the firm books, and that the omission to enter it was the neglect of Cushman. Case was a third party with no knowledge and no means of knowledge of the firm's indebtedness other than that derived from the partnership books. He had dealt with Cushman on his faith in the accuracy of the accounts which those books disclosed. On such facts this court most justly held that he could not be made liable for a debt of whose existence he must of necessity have been ignorant when the agreement of indemnity was executed. But the rule adapted to such a state of facts does not apply in favor of a party by whom the existence of a liability and the person to whom it was due were known, and who retained in his service the agent through whose intervention the liability was incurred. Case *v*. Cushman would be an apt authority if it appeared that the plaintiff knew the terms on which the patterns were borrowed, and concealed the knowledge, while the defendant supposed them to be the property

[Farrington v. Woodward.]

of the firm, and executed the agreement in that conviction. The transaction would have been a fraud of which the defendant would have been the victim. No such ground was taken, and yet the cause in many respects was tried as if such a theory had been asserted. The fact was controverted on the argument, but be it that the plaintiff was aware of the terms of the receipt given by Hurlburt. The defendant had access to the same source of information. Before the dissolution he had an equal interest with the plaintiff in the details of the business. After the dissolution it was his special duty to ascertain the extent and nature of a liability the existence of which he is admitted to have fully known.

Judgment reversed, and a *venire de novo* awarded.