# William H. Cole, Jr., *v.* J. Grant High, Appellant.

[Marked to be reported.]

### *Pleading—Practice, C. P.—Evidence.*

In an action of trespass plaintiff averred in his statement of claim that defendant had wrongfully and fraudulently induced him to part with and deliver certain goods to defendant, at a certain price; and had induced him to accept defendant's check therefor by falsely and fraudulently representing that said check was as good as cash; that there was at that time sufficient funds in bank to pay it, and that it would be paid by the bank. Plaintiff further averred in his statement that defendant, after obtaining possession of the goods, converted them to his own use and fraudulently stopped payment of the check. *Held*, (1) that the deceit in obtaining the goods was the fundamental element in the right to recover, and therefore the whole transaction in the course of which the goods were obtained was the real subject of the controversy; (2) that evidence was therefore necessarily admissible as to all the facts of the transaction to determine the merits of the controversy; (3) that plaintiff could not recover unless he showed fraud or deceit, inasmuch as the plaintiff's statement contained no claim for goods sold and delivered.

### *Evidence—Contradiction of witness.*

An offer in the trial of a civil cause to show that in prior criminal proceedings plaintiff swore to statements which were false, without specifying any particular statement that was alleged to be false, is inadmissible.

### *Evidence—Deceit—Worthless check.*

In an action in the nature of deceit to recover damages for the obtaining of goods by means of an alleged worthless check, the defendant may prove that when he gave the check he had money in the bank to meet it.

### *Evidence—Deceit—Stopping payment of check—Intent.*

In an action of trespass in the nature of deceit to recover damages for the loss of goods obtained from plaintiff by fraud where the plaintiff alleges that he was induced to surrender the goods on the representation that the check for their payment was good and would be paid, and plaintiff alleges that after he surrendered the goods defendant stopped payment of the check, it is proper to permit the defendant to testify that when he gave the check he had no other intent than that it should be paid, and it is also proper to permit him to show that he stopped payment under advice of counsel.

### *Evidence—Receipt.*

In such a case a receipt given for the goods " in full settlement of account to date," is not conclusive as between the parties, nor does it show a settlement of all accounts between them.

. *Practice, C. P.—Charge of court.*

An instruction which assumes the proof of a matter of fact asserted by one of the parties and denied by the other is erroneous.

*Deceit—Damages—Erroneous instruction.*

In an action to recover damages for goods obtained by deceit it is error to charge: " In addition to the value of the goods the plaintiff would also be entitled to interest upon their value from the time of the taking; also damages for the detention, and such damages as the jury may reasonably think he deserves."

Argued Jan. 16, 1896.   Appeal, No. 148, July T., 1895, by defendant, from judgment of C. P. No. 3, Philadelphia County, Sept. T., 1893, No. 193, on verdict for plaintiff.   Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.   Reversed.

Trespass in the nature of deceit for obtaining goods by false and fraudulent representations.   Before FINLETTER, J.

At the trial it appeared that the plaintiff had done some work for defendant on a small vessel which belonged to the latter.   There was a dispute between them about the amount due for this work.   On September 23, 1893, the parties came together, and plaintiff agreed to deliver to defendant one lathe, one typewriter, one dynamo and one bicycle, defendant to pay to plaintiff $135.   Defendant gave to plaintiff a check for this amount, and also the following receipt:

" Received from W. H. Cole, Jr., one lathe, one typewriter, one dynamo and one bicycle in full settlement of account to date.

"J. GRANT HIGH."

Plaintiff in his statement of claim averred as follows:

" The said plaintiff was heretofore to wit, on the twenty-fifth day of September, A. D., 1893, at the city and county of Camden, and state of New Jersey, the owner and lawfully possessed of certain goods and chattels to wit: one lathe, one typewriter, one dynamo, and one bicycle of great value, to wit, of the value of five hundred dollars, lawful money of the United States of America; yet the defendant, well knowing the above described goods and chattels to be the property of the said plaintiff and of right to appertain and belong to him, but contriving and fraudulently intending, craftily and subtly, to deceive and de-

fraud the said plaintiff in this behalf, wrongfully and fraudulently induced the said plaintiff to part with the possession of the said goods and chattels and took them into his, the defendant's own possession by the following artifice or trick: the said defendant agreed to take the said goods from the said plaintiff for the sum of one hundred and thirty-five dollars cash upon the delivery of the said goods to the said defendant, and offered the plaintiff his check for that amount; the plaintiff refused to accept such check, whereupon defendant represented that the said check was as good as cash and would be paid as soon as presented to the bank upon which it was drawn and that there were at that time sufficient funds in said bank to pay the said check. The said representations were fraudulent and intended to deceive and did deceive the plaintiff and induced him to take the said check and allow the defendant to remove the said goods from plaintiff's place of business, whereupon the said defendant as a part of the said trick and fraud ordered the said bank upon which the said check was drawn, to refuse payment of the said check when presented for payment, which the said bank accordingly did.

" And the said defendant hath not as yet delivered the above described goods and chattels or any part to the said plaintiff, though requested so to do, but has refused so to do, and afterwards, to wit, on the day and year aforesaid and at the county aforesaid, converted the said goods and chattels to his own use, to the damage of the said plaintiff one thousand dollars."

When plaintiff was on the stand, the following offer was made by defendant:

Counsel for defendant offers to prove by this witness, on cross-examination, that in the criminal proceedings instituted for the recovery of this money the plaintiff swore to statements which were false.

Objected to. Objection sustained. Exception for defendant. [1]

When J. Grant High, the defendant, was on the stand he was asked by his counsel:

At the time the check was presented for payment, had you sufficient money in bank to meet it?

Objected to. Objection sustained. Exception for defendant. [2]

Defendant's counsel then asked him, whether at the time that he gave the check, he had any intent other than that it should be paid.

Objected to.  Objection sustained.  Exception for defendant. [3]

Also whether he did not stop payment of the check under advice of counsel.

Objected to.  Objection sustained.  Exception for defendant. [4]

Defendant's counsel proposed to prove by Dr. Harry F. Rhoads that on the day the check was given he returned from Camden with Mr. High and saw Mr. Cole returning from Philadelphia on a furniture wagon which carried the lathe.

Objected to.  Objection sustained.  Exception for defendant. [5]

The court charged in part as follows:

It appears from the evidence that these parties, plaintiff and defendant, had business relations for some time.  Then, there was a dispute between them as to the amount the plaintiff charged, and expected to collect for the repairs made by him to the little vessel which belonged to the defendant.  The result of that was, whatever may have been the contract between them, and the defendant says that it was to be $105, and that the plaintiff charged him $160 or $170,—I say the result of that was that a dispute arose between them, and, on a certain date, about the 28th of September, they met together and settled all their matters.  [The receipt which has been given in evidence concludes both of the parties in every respect—not only for the individual articles mentioned in this, but, as I understand the contract, it shows a settlement of all accounts between them.  Therefore it is a matter of no consideration in this case what the relations of the parties were before that contract was entered into.] [6]  It was a matter of no consequence as to whom the articles, mentioned in that receipt, belonged, or what was their specific or individual value at that time.  Both of the parties fixed their value by the receipt, and the check was given in settlement—and they fixed that value at $135. You will see that in fixing it at that sum, it was really a compromise made by both of these parties, and it is less than the plaintiff claimed by about $30.00, and more by about $30.00

than the defendant admitted he owed the plaintiff. So that you can see that the very sum named, for settlement, was a compromise between the parties, and perhaps a fair and equitable compromise between them. However that may be, they themselves fixed the value of the articles. When the agreement was entered into there was a discussion as to how the purchase money should be paid. There was some talk about it, and the defendant offered the plaintiff a check in payment, assuring him that he had money in the bank; however, in some way they ascertained that the defendant had sufficient money in bank to pay that check. I have already said to you that it was a matter of no consequence whether he had money in bank at that time or not. A man may very well give a check on his bank and then make a deposit to meet it, and he may very well have money in the bank and have money there at the time, but all the while intend that the money shall not be paid, because, after giving the check, he has an opportunity to go to the bank and order them not to pay it. After all, in either case, the jury must always, when a question of that kind arises, infer from the act itself the intention of the party at the time he gave the check, and from what he did subsequently.

It is for you to say whether, when this defendant gave that check, he intended that it should be paid, or not. You can only judge of his intentions by what he did. No man can be convicted in a criminal court, or held responsible in a civil court, if he is allowed to say what his intention was. If a man commits a crime or an offense against the law, the law does not hold him responsible, unless the intention appears, but he would never be allowed to say, in his own defense, that he did not intend to do it. So that you are compelled, whether suing in the criminal or the civil court to look at the acts and conduct of the man when you are judging as to his intention. What was the natural conclusion from the evidence in this case? The defendant insisted to the plaintiff that he had plenty of money in bank, and in order that that might be definitely ascertained both parties called up the cashier of the bank, and it was established that he had there the money to pay the check. Then, what act followed, before the plaintiff took the opportunity to collect the check? I do not know that it appears from the evidence how soon the check was stopped, but inasmuch as

it has been said by his counsel that he took the advice of counsel, and was advised by counsel to stop the check, it may very well be assumed that the payment of the check was stopped soon enough to prevent the plaintiff collecting it. At all events, he did give the order, and when the check was presented, payment was refused. In addition to that you are to consider what he said when the plaintiff went to him to demand the money or goods for this check. What would an honest man, a man who did not intend to cheat or trick another, have done on that occasion? It would have been honest for him to say you should make a deduction for the breaking of that lathe, but there was nothing of that kind done. The testimony was that he said "I tricked you that time" or "I got you that time." Whatever he did say or is alleged to have said was not denied by him when upon the stand, and there is no evidence by the defendant or any one else that he said anything else, or made any other reply to the demand for the payment of the check or the return of the goods. All these things should be taken into consideration in arriving at a conclusion as to what his intention was when he gave the check and received the goods.

If you are satisfied that he intended that this transaction from the beginning to the end of it, until he gave the directions not to pay the check, that he intended the check should not be paid, but that he should get the goods, as he did get them, without paying for them, and that he intended to trick the plaintiff out of the goods, then of course, he is guilty of a fraud, and having obtained the goods by reason of that fraud, your verdict must be for the plaintiff.

If you arrive at the conclusion that he did thus obtain this property or these goods by this trick, then, of course, it is your business to estimate the damage. [The only value which you can put on goods of this kind would be their value, and that the parties themselves have established by the writings which are in evidence. The parties fixed their value at $135, that was the price agreed upon by them, and therefore that is the lowest price which you can put upon the goods.] [7] In estimating that, if you find from the evidence that the plaintiff made this arrangement, and undertook to deliver the goods, and that any of them were injured in his delivery, then, you should make a fair reduction with regard to that. There is evidence

that the goods were injured, that they fell from the wagon whilst they were in the possession of the defendant's employees. That is to say, if they fell from his hands when he was attempting to assist the driver to deliver the goods. I will not say that that was a virtual delivery, because there is some question raised on the testimony as to whom the driver was responsible, as to whom the driver was operating for. [You have the plaintiff's testimony that he did not employ him, that the goods were delivered to the defendant, and the defendant himself says that the goods were delivered to the driver or the owner, or the man who was sent for them. I do not understand exactly how he makes it appear that it was the plaintiff's driver, when he himself gave the order, and sent him there, and had him convey the goods.] [8] However, that is a matter entirely for you. If you believe from all the testimony in the case that the plaintiff was to deliver the goods, whether he contracted to do so or not, then, he would be responsible if they were injured, because it was before the defendant took possession of them. If the defendant sent the man there, then, of course, the plaintiff would not be responsible for any injury. But that matter I leave entirely to you, although there is not that satisfactory evidence which the jury should have in relation to the damage. The testimony in this case is that the lathe—a thing made entirely of iron and steel, fell and was injured. I cannot conceive how a man who does not understand the business very well can say that that entirely ruined the machine—and if he asks the jury to say so, he should state in what particular it ruined it, because it does not seem possible to me that a lathe so strongly and firmly made in all its material parts could be entirely destroyed by simply dropping it from a wagon. However, if you are satisfied that the plaintiff undertook the delivery, and if you are satisfied that the lathe was injured, then, you must endeavor to arrive at some estimate of the damages for the injury which was done. I ought to say in this connection that a person to whom an article is sold, when he claims that the person who sold it was to deliver it, and in the act of delivery destroyed it, so entirely destroyed it as to destroy its usefulness, ought to have been tendered back the articles with the statement that it was so injured, and then make some claim. It does not appear that there was any effort to send it back. However, these. are all

matters for you.   [In addition to the value of the goods, the plaintiff would also be entitled to interest upon their value from that time; also damages for the detention, and such damage as the jury may reasonably think he deserved, and that is a matter entirely for the jury.] [9]   I refuse the defendant's points.

Defendant's points among others were as follows :

1. If the jury believe the goods in question did not belong to the plaintiff, but were the property of the defendant, then the plaintiff cannot recover, in whatever way the plaintiff may have gained possession of his own property.  *Answer :* Refused. [10]

2. As this suit is not brought upon the check but upon the fraudulent conversion of defendant's property, the plaintiff cannot recover unless he establishes to the satisfaction of the jury that the defendant was guilty of fraud in giving the check: Greenwald v. Gebbie, 24 W. N. C. 72.   *Answer :* Refused. [11]

3. The plaintiff cannot recover unless he satisfies the jury that there was a fraudulent conversion of the property in question.   *Answer :* Refused. [12]

4. Unless the jury believe that the defendant was guilty of a deliberate deceit, the plaintiff cannot recover.  *Answer :* Refused. [13]

5. If the jury believe that the defendant gave the plaintiff the check in good faith and with a bona fide intention of paying the same, there can be no recovery in the absence of other evidence of fraud, and the mere failure to pay the check is not a fraudulent conversion of goods.  *Answer :* Refused. [14]

6. Failure to pay the check or stopping its payment is not a fraud in the absence of testimony to show that the check was given or its payment stopped in bad faith.  *Answer :* Refused. [15]

Verdict and judgment for plaintiff for $175.   Defendant appealed.

*Errors assigned* were (1–5) rulings on evidence, quoting the bill of exceptions; (6–15) above instructions, quoting them; (16) that the charge as a whole was inadequate and gave undue prominence to the plaintiff's side and version of the case to the prejudice of the defense.

·*James M. Beck* of *Harrity & Beck, Chapman & Chapman* with him, for appellant.—There can be no question at this date that in an action of deceit, the scienter must not only be alleged but proved, and the jury must be satisfied that the defendant made a statement knowing it to be false, or with such conscious ignorance of its truth as to be equivalent to a falsehood: Dilworth v. Bradner, 85 Pa. 238; Duff v. Williams, 85 Pa. 490; McCandless v. Young, 96 Pa. 289; Hexter v. Bast, 125 Pa. 52.

The court's instruction as to damages was remarkable. What its true measure should have been, is shown in the case of Erie City Iron Works v. Barber, 102 Pa. 156, which was an action of deceit.

*Andrews T. Jenkins,* for appellee.—There is no doubt that in such cases trover or replevin may be brought: Harner v. Fisher, 58 Pa. 453; Harris v. Smith, 3 Ser. & Rawle, 20; MacKinley v. McGregor, 3 Whart. 368; Bughman v. Bank, 159 Pa. 94; 2 Kent's Com. 497, 498; Leedom v. Phillips, 1 Yeates, 527; Backentoss v. Speicher, 31 Pa. 324.

It was not necessary for us, as the defendant seems erroneously to think, to show a fraudulent conversion: 2 Tr. & Haly's. Pr. sec. 1564; Taylor v. Hanlon, 103 Pa. 504; Griswold v. Gebbie, 126 Pa. 353.

The principle that the parties could settle their disputes and fix their rights by an agreement of compromise is well settled. By it the defendant was estopped, (1) from setting up as a defense anything that antedated the new agreement; (2) from denying that the title to the goods at the time of the agreement was in the plaintiff: Chamberlain v. McClurg, 8 Watts & Ser. 31; Fleming v. Ramsey, 46 Pa. 252; Flegal v. Hoover, 156 Pa. 276; 1 Greenleaf on Evidence, sec. 207.

The rule as to damages laid down by the court was entirely correct: McDonald v. Scaife, 11 Pa. 381; Taylor v. Morgan, 3 Watts, 333; Neiler v. Kelley, 69 Pa. 403.

OPINION BY·MR. JUSTICE GREEN, February 17, 1896:

In this case the action was not founded upon the check for $135 given by the defendant to the plaintiff. Nor was it an action brought for the recovery of the personal chattels which were involved in the transaction between the parties. The

cause of action as it is set forth in the plaintiff's statement appears to be the obtaining by means of fraud and deceit from the plaintiff, of certain chattels named as one lathe, one type writer, one dynamo, and one bicycle. Judged by the common law classification of actions it would be an action of case for deceit. According to the plaintiff's statement it is a claim to recover damages for not returning the goods fraudulently obtained, and includes an allegation that the defendant converted the goods to his own use. The claim seems to be a mixture of trespass, trover and case for deceit, but the deceit in obtaining the goods is the fundamental element in the right to recover. Without the deceit the case would be simply a sale of goods by the plaintiff to the defendant and the action brought to recover the purchase money. But that is not the cause of action contained in the statement. It follows that, regarding the cause of action as a claim to recover damages for deceitfully obtaining goods, the whole transaction in the course of which the goods were obtained is the real subject of the controversy.

The door is therefore necessarily thrown open to the introduction of all the facts of the transaction in order to determine the merits of the controversy. The learned judge of the court below seems to have regarded the giving of the check as the culmination of all prior negotiations and excluded evidence of what occurred before the check was given, and yet he left the case to the jury almost entirely upon the question of the fraud and deceit alleged to have been practiced by the defendant. Thus he said to the jury, "If you are satisfied that he (defendant) intended that this transaction from the beginning to the end of it, until he gave directions not to pay the check, that he intended the check should not be paid, but that he should get the goods, as he did get them, without paying for them, and that he intended to trick the plaintiff out of the goods, then, of course, he is guilty of a fraud, and having obtained the goods by reason of that fraud, your verdict must be for the plaintiff."

The whole of the charge is of the same import, and we do not say it was an incorrect view of the case. But for that very reason we think that all evidence of facts occurring either before or after the giving of the check which would or could throw light upon the case in that view of it should have been freely admitted. Having said this much in regard to the gen-

eral aspect of the case we can dispose of the assignments of error in their order. We think the first assignment is hardly sustained simply because the offer was not sufficiently specific. Of course if the defendant had referred to any particular part of the affidavit and asked the plaintiff whether that statement was true or false he should have been allowed to do so. But the offer was simply a general offer to show that in the criminal proceedings the plaintiff swore to statements which were false. Without any specification of any particular statement that was alleged to be false we cannot say there was error in rejecting the offer.

The second assignment was to the rejection of an offer by the defendant to prove that when he gave the check he had money in the bank to meet it. As this would tend to rebut a presumption of fraud in giving it we think clearly the offer should have been admitted and therefore sustain this assignment. We think in view of all the circumstances the third assignment must be sustained. The question at issue was in large part the intent of the defendant in giving the check. By the charge it was made a most important part of the inquiry by the jury. At the time the check was given the goods had not been delivered and the alleged defects in them had not been discovered. Yet the burden of the plaintiff's case, and of the charge, is, the intent of the defendant in giving the check. It was alleged by the plaintiff that this was part of the fraudulent scheme to get possession of the goods from the beginning, and the court left the question in that way to the jury. We think it was competent for the defendant in view of this aspect of the case to testify to his intent at the time of giving the check and to fortify it with such an explanation of the facts as would bear upon that subject. The third assignment is sustained.

Upon the same considerations we sustain the fourth assignment. We think it was clearly competent for the defendant to show that he stopped payment of the check by the advice of counsel. It would certainly tend to show in a most important sense that stopping payment of the check was not part of a scheme of fraud from the beginning.

The fifth assignment is to a matter of not much importance, but we think the offer should have been admitted as tending to show some participation by the plaintiff in the delivery of the

lathe.   It was a very slight circumstance but we cannot say it had no significance.   That would be for the jury.   We sustain the assignment.

For reasons already stated we sustain the sixth assignment. We do not regard the receipt as concluding both parties, or as showing a settlement of all accounts between them considering the aspect in which the case was presented to the jury.   We sustain the seventh assignment for the same reason.

The eight assignment is sustained because the part of the charge objected to assumes the truth of a matter of fact which was denied by the defendant, and it was therefore for the jury.

We think the part of the charge complained of in the ninth assignment gave the jury too much license in the matter of damages.   We regard it as contrary to our rule in this class of cases: Erie City Iron Works v. Barber, 102 Pa. 156.

We feel obliged to sustain all the assignments of error from the tenth to the fifteenth both inclusive.   This necessity grows out of the character of the action.   It is based entirely upon the allegation of fraud and deceit practiced by the defendant in obtaining the goods.   If there was no fraud or deceit the defendant is not liable in this action.   There is no claim in the plaintiff's statement for goods sold and delivered.   No claim is made upon the check, and we are unable to discover in the statement any cause of action which is not based upon an accusation of fraud, in obtaining the goods.   The mere nonpayment of the check is not, of itself alone, any evidence of fraud, especially in view of the defendant's testimony and theory of the whole transaction.   Hence we think there was error in the various rulings complained of in the several assignments we are now considering.   Of course if there was fraud in fact there could be a recovery upon the plaintiff's theory, and under the statement, as the transaction in that aspect would have authorized the plaintiff to rescind the contract and recover just as he claims.   But the court by the charge and in answer to the severals points of the defendant denied the necessity of any fraud to accomplish that result, and in so holding there was error, in our judgment.

Judgment reversed and new venire awarded.