Eddyside Company *v.* Seibel et al., Appellants.

Argued April 25, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Leighton R. Scott,* of *Hogan & Scott,* for appellants.

*Calvin F. Smith,* of *Smith & Paff,* with him *Francis J. Gafford,* for appellee.

OPINION BY RHODES, J., October 7, 1940:

Plaintiff, a corporation, instituted an action in trespass against twenty-two defendants. Plaintiff in its statement of claim alleged that it orally or in writing contracted with several of the defendants for the furnishing of music for dancing at the plaintiff's Eddyside pavilion on various dates in 1939, and that defendants, individually or acting in combinations of two or more, unlawfully and maliciously induced the breach of these contracts on or about May 12, 1939. At the trial a compulsory nonsuit was granted as to twelve of the defendants. The jury rendered a verdict for plaintiff against the ten remaining defendants. Their motions for judgment n. o. v. and for a new trial were dismissed.

Defendants moved for judgment n. o. v. on the grounds that the dispute was a labor dispute under the Act of June 1, 1937, P. L. 1168, 43 PS §211.1 et seq., over which the court was without jurisdiction, and that the case should not have been allowed to go to the jury without proof of malice. The reasons assigned in support of the motion for a new trial were that the trial court had excluded from the evidence the constitution and by-laws of the American Federation of Musicians, testimony of the plaintiff's violation of these by-laws offered in justification of the defendants' conduct, and testimony of one of the defendants as to the malice intended in his conduct, and that the opinion testimony of plaintiff's president was permitted as to the amount of its loss. From the judgment entered defendants have appealed.

The denial of the motions and the refusal of the court below to recognize the grounds upon which they were based have been assigned as error. Although conceding the point not to have been raised in the court below, appellants also assign as error the affirmance of two of plaintiff's requests for instructions to the jury with reference to proof of appellants' ill will required for recovery by plaintiff.

At the trial it was established that appellants were members of an organization described as the Musicians Protective Union, American Federation of Musicians, an affiliate of the American Federation of Labor. All except four were members or officers of the local unit, No. 379, of that organization, functioning in the city of Easton where the plaintiff conducted its business. Each of those four was the conductor or business manager of a dance orchestra from another locality, composed of musicians who held membership in another unit of the same organization functioning in that locality. The contracts of these four with plaintiff to furnish orchestras were not performed, and it is not disputed that their nonperformance was the result of receipt by each of a letter from the secretary of local No. 379 stating that the furnishing of music at plaintiff's pavilion had been restricted by the national office of the American Federation of Musicians to members of local No. 379. The testimony also clearly established that these letters were written as the result of the local union's asking and receiving authority to impose such a restriction from the national office of its organization. There was conflict of testimony as to whether the local body was motivated by plaintiff's failure to comply with its requests to engage local orchestras for half the dances scheduled for 1939, or by reports from its members that plaintiff's manager had admitted employing out-of-town orchestras at less than the local union's wage scale.

Appellants contend that the court below had no jurisdiction over the subject-matter of this action which, in appellants' view, is a "labor dispute" within the terms of the Pennsylvania Labor Relations Act of June 1, 1937, P. L. 1168,[1] 43 PS §211.1 et seq., and by that act placed under exclusive jurisdiction of the Labor Relations Board created thereby. This position is clearly untenable. Section 3, 43 PS §211.3, contains various definitions of terms used in the act, among them the following: "(h) The term 'labor dispute' includes any controversy concerning—(1) terms, tenure or conditions of employment; or concerning (2) the association or representation of persons in negotiating, fixing, maintaining, changing or seeking to arrange terms or conditions of employment, regardless of whether the disputants stand in the proximate relation of employer and employe." The term "labor dispute" is used in the act in definition of other terms, for example, "employe,"[2] and "labor organization."[3]

Section 8, 43 PS §211.8, describes the jurisdiction of the Labor Relations Board, and makes it exclusive not over "labor disputes," but over "unfair labor practices" as defined in section 6, 43 PS §211.6. Section 8 fails to mention the term "labor dispute." We find nothing in the present record remotely suggesting that an "unfair labor practice" as defined in section 6 is involved in the present controversy to remove it from the jurisdiction of the court below. It may be that the American Federation of Musicians is a "labor organization." But, except in so far as some of its members happen to be defendants in the present case, it is not concerned with this matter and is not even joined as a party. To adopt appellants' interpretation would re-

---

[1] Various sections of this act have been amended by the Act of June 9, 1939, P. L. 293.

[2] Subsection (d), §3, of the Act of June 1, 1937, P. L. 1168.

[3] Subsection (f), §3, of the Act of June 1, 1937, P. L. 1168.

quire the overthrow of fundamental principles of law, which protect recognized rights of everyone. For example, under appellants' construction, section 3, 43 PS §211.3, would take out of the courts and put in the province of the board civil and criminal actions for assault and battery should members seek to force non-union men to join their organization, or should a labor leader commit mayhem on an employer in the course of negotiations. The same would be true of actions for damages to the employer's property by striking employees. The act discloses no intention on the part of the legislature to attempt to make any such change. But it is apparent that the act does give jurisdiction to the board over "unfair labor practices" defined in terms of "employes" and "labor organizations," themselves defined, in turn, in terms of "labor disputes."

Moreover, it does not appear that any question of terms or conditions of employment is involved in the present case since appellants, who were under contract with plaintiff, by all ordinary tests were not employees but independent contractors who supplied a certain number of musicians, individually participating in none of plaintiff's dealings, and nameless and unknown to it. See *Meadowmoor Dairies, Inc., v. Milk Wagon Drivers' Union of Chicago,* 371 Ill. 377, 21 N. E. 2d 308.

Plaintiff's action is based upon an alleged unlawful interference by third parties, who are not employees of plaintiff, with contracts made with other parties who were also not at the time employees of the plaintiff. For such conduct plaintiff could maintain an action against the wrongdoers. *Caskie v. Philadelphia Rapid Transit Co.,* 321 Pa. 157, 160, 184 A. 17.

The conclusion is obvious that the Act of June 1, 1937, P. L. 1168, 43 PS §211.1 et seq., has no relevance to the present matter. The third assignment of error is overruled.

Appellants next contend that the court below erred in allowing the case to go to the jury without proof of the element of malice in the conduct of appellants toward plaintiff. The concept of malice as involved in actions for interference with contractual relations is well expressed in *Klauder v. Cregar et al.*, 327 Pa. 1, at page 7, 192 A. 667, at page 670: " 'When one has knowledge of the contract rights of another his wrongful inducement of a breach thereof is a wilful destruction of the property of another and cannot be justified on the theory that it enhances and advances the business interests of the wrongdoer': *Sorenson v. Chevrolet Motor Co.*, 171 Minn. 260, 266, 214 N. W. 754. 'A violation of legal right committed knowingly is a cause of action, and it is a violation of legal right to interfere with contractual relations recognized by law if there be no sufficient justification for the interference': *Quinn v. Leathem* (1901) A. C. 495, 510. Maliciousness 'does not necessarily mean actual malice or ill-will, but the intentional doing of a wrongful act without legal or social justification': *Campbell v. Gates*, 236 N. Y. 457, 460, 141 N. E. 914.

" 'One who, having knowledge of an existing valid contract between others, intentionally, knowingly, and without reasonable justification or excuse, induces one of the parties to the contract to breach it to the damage of the other party, is liable in an action to recover the damages suffered. The action is predicated on the intentional interference without justification with contractual rights, with knowledge thereof. Such interference constitutes a legal wrong, and, if damages result therefrom, a valid cause of action exists therefor': *Hornstein v. Podwitz*, 254 N. Y. 443, 173 N. E. 674; *Campbell v. Gates*, supra; *Lamb v. Cheney & Son*, 227 N. Y. 418, 125 N. E. 817; *Hogue v. Sparks*, 146 Ark. 174, 225 S. W. 291."

The evidence, if believed by the jury, offered ample

proof of appellants' knowledge of existing contractual relations of some of their number with plaintiff, and of their intention to interfere with those relations without regard to the harm thus caused plaintiff.

Paul T. M. Hahn, secretary of the local union and one of the appellants, testified that he knew about the contract in writing between Harry Romig and plaintiff. He further testified: "Q. I am asking you: Even though the contract was made before the tenth [of May], you gave Romig notice he could not play the engagement? A. Yes, sir. Q. And you knew you were breaking—you were inducing Romig to break a contract, didn't you? A. Yes, sir. Q. You knew that Romig did break it then, don't you? A. Yes, sir. Q. Did break a contract that was made prior to the letter that you referred to as your authority which is dated the tenth: isn't that so? A. He was notified to cancel the contract. Q. Notified to cancel the contract? A. Yes. Q. Even though it was made prior to the time that you received this notice putting Eddyside on forbidden territory? A. Yes, sir." This witness also testified that he did not give any consideration to the fact that plaintiff would thereby be left without an orchestra.

Paul Meas, one of the appellants under contract with plaintiff, after being notified by the Easton local of the ruling against his performing his contract, volunteered the written statement to plaintiff that: "I think I know the dance situation pretty well in your locality and I feel sure that if you are forced to use local bands all the time, you will also soon be forced to close Eddyside." This witness on cross-examination also testified: "Q. And then you also knew that they would soon be forced to close Eddyside, didn't you? A. (No answer). Q. Isn't that so, Mr. Meas? A. Yes. Q. And you said that as a union man yourself, and as a member of that same union? A. Yes. Q. You knew that this was wrong, didn't you, what was being done to Eddyside?

A. No, I wouldn't say that. Q. Wouldn't you say that it is wrong to drive somebody out of business? ...... [Objection sustained.] Q. Well, you knew when there was a contract made by an orchestra or a band to play on a certain night, and they couldn't play, and they didn't hire the Easton musicians, that they couldn't have a dance. Didn't you know that? A. Yes. Q. And then you knew that that would force the closing of this place, didn't you? ...... [Objection overruled.] Q. You knew that would close the place, didn't you? A. Well, I didn't actually know it. I supposed that's what would happen."

In view of such evidence it cannot be said that the trial court should have dismissed the action for want of proof of the intentional character of appellants' conduct, or their consciousness of and unconcernedness with the effect of their action upon plaintiff. Thereafter, the only point remaining for determination was justification, legal or social. The evidence convicted them of sufficient inconsistency in that respect to make the deliberation of a jury indispensable. On the documentary proofs supplied by plaintiff it was shown that the local union requested plaintiff to engage orchestras composed of members of the local for half the dances held at plaintiff's pavilion during 1939; this having been declined by plaintiff, on the testimony of appellants themselves, evidence was collected to charge plaintiff with failure to pay a contract price based upon the local union wage scale, and authority was sought and received from the national office of their organization to restrict plaintiff to the use of members of the local only. It is significant that in communicating that restriction to plaintiff its disregard of the local union wage scale, now given as justification for the restrictions, was not referred to. There is also an absence of evidence of any attempt by the local union to determine what wage scale was used as the basis for the price agreed

upon in contracts already made by plaintiff. Apart from the question of law whether appellants' duties under the rules of their organization constituted justification for their admitted interference with plaintiff's contractual rights, the jury, by the very inconsistency of appellants' acknowledged conduct, was called upon to say at least whether that interference was actuated by the disinterested motives avowed before that tribunal or by a desire for a local monopoly, entire or partial, of plaintiff's engagements. In our opinion the court below did not err in concluding that there was sufficient evidence to raise the issue of fact whether appellants acted with malice, as that term has been defined in the authorities which we have cited above. The first, second, and tenth assignments of error are overruled.

The fourth assignment of error complains of the trial court's refusal to admit into evidence the constitution and by-laws of the American Federation of Musicians. This evidence was offered because the written contracts between plaintiff and some of the appellants contained the following provision: "As the musicians engaged under the stipulations of this contract are members of the American Federation of Musicians, nothing in this contract shall be so construed as to interfere with any obligations which the musicians owe to the American Federation of Musicians by reason of their prior obligations to the American Federation of Musicians as members thereof." The position of appellants from their offer of proof appears to be: (1) That because these by-laws require a contract with any member of the organization to be on file with the secretary of the local union before it becomes binding, the obligation of certain written contracts in the present case was nonexistent for nonfulfillment of that formality prior to the issue of the restriction preventing their performance, while the obligation of the oral contracts never came into being because for them filing was impossible; (2) that

it was a violation of those by-laws for any employer to solicit union member services for less than the union scale, requiring any members who learn of such practice to report it to the national office of the organization and empowering the national president to impose such a restriction on the rendering of services to the offender as this plaintiff suffered. On the first ground, as to the oral contracts which were not shown to have included any reference to these by-laws, it must be observed that the plaintiff was not a member of the organization and could not possibly be under any of the duties imposed by its by-laws upon its members. It may have been the duty of its members to consider any contract not filed in writing with the local secretary to be invalid, and for the breach of this duty suitable penalty might be visited within the organization upon the offending member, but such intra-organization legislation would be of no effect upon his duty under the law of this Commonwealth to perform his contract. There can be no conflict between the law of the Commonwealth and the by-laws [4] of an organization of citizens of the Commonwealth; the Commonwealth is the sovereign.

As to the written contracts, the provision above quoted specifically refers to the obligation of the mem-

---

[4] "By-law" is defined by lexicographers as "a rule or law adopted by an association, or corporation or the like, for its government in the conduct of its own affairs, subordinate to its constitution or charter" (Funk and Wagnalls New Standard). Since the charter of a corporation is itself the creature of the law of the Commonwealth, it follows that to that law the by-laws of any corporation must be subordinate. The limitation of the definition to "its government in its own affairs" is also not to be overlooked, and that limitation finds reflection in our own decided cases, for example, *Bagley v. Reno Oil Co.*, 201 Pa. 78, 50 A. 760, where a corporation's by-laws are called "its private statutes for its own government, unless contrary to the laws of the land. 1 Blackstone 476; 2 Kent 278." See, also, *Hayes v. German Beneficial Union*, 35 Pa. Superior Ct. 142.

bers of the organization to it, and that obligation could not be so extensive as to relieve the member of his duty outside the organization under his contract. Appellants cite *Harrity et al. v. Continental-Equitable Title & Trust Co. et al.*, 280 Pa. 237, 124 A. 493, as authority for the proposition that a contract must be so construed, if possible, as to give effect to all its provisions. In that case a number of persons created a trust for the sale of real estate, giving their trustee power to sell and agreeing that a majority in interest of the beneficiaries should have judgment over problems of management. A bill in equity brought by a majority to restrain the trustee from a proposed sale was dismissed. The Supreme Court affirmed the decree on the reasoning that to allow the majority to override the trustee's decision would make the two clauses of the deed of trust contradictory, while to limit the power of the beneficiaries to judgment over management merely would give effect to every provision of the writing. It seems clear that on the first ground stated in the offer the evidence was inadmissible, and, if admitted, would have served only to confuse the jury.

The provisions of the by-laws for the disciplining of employers soliciting disregard of union wage scales, in so far as offered in extenuation of appellants' conduct to disprove malice, were already sufficiently covered by the testimony of the witness Hahn, secretary of the Easton local. In so far as offered to show appellants under a duty in conflict with a legal duty of some as parties to the contracts and of the others to respect and not interfere with the contracts, they were inadmissible. The fourth assignment of error is overruled.

The sixth assignment of error relates to the exclusion of testimony of a traveling representative of the American Federation of Musicians to the effect that he had received information from the various members of the local union of plaintiff's contracting in disregard of

the union wage scale. These statements were admittedly not made in the presence of any officer or representative of the plaintiff, and were properly excluded. This assignment is overruled.

The seventh, eighth, and ninth assignments of error present for review the trial court's ruling inadmissible the denial of one of appellants, William H. Seibel, president of the local union, that he had induced the breach of the contracts with plaintiff or acted with malice toward plaintiff. Counsel for appellants refer to numerous authorities holding admissible a party's testimony as to his intention when intent is a material inquiry in the case. See *Arnold v. Cramer*, 41 Pa. Superior Ct. 8; *Cole v. High*, 173 Pa. 590, 34 A. 292; *Bartley et al. v. Phillips et al.*, 179 Pa. 175, 36 A. 217. The difficulty with the argument which has been advanced is that at no time was the witness asked whether he intended, individually or in concert with others, to induce breach of the contracts in question, or intended to act with malice toward plaintiff, but whether he had committed these acts. Whether these acts had been committed was for the jury to conclude from the testimony, including, if properly elicited, the testimony of the witness as to his intent. As called for in the questions asked the witness, the testimony was inadmissible as a conclusion of the witness. See *Underhill v. Wynkoop*, 15 Pa. Superior Ct. 230; *Farrington v. Woodward*, 82 Pa. 259; *Smith v. E. M. Cohn & Co.*, 170 Pa. 132, 32 A. 565; *Spotts v. Spotts*, 4 Pa. Superior Ct. 448. The seventh, eighth, and ninth assignments of error are overruled.

The fifth assignment of error questions the admissibility of testimony received from the president of the plaintiff corporation that the loss suffered from the breach of the contracts in question amounted to $2,000. In view of the fact that the verdict was in the amount of $500, it is not evident that the testimony was of

undue effect on the minds of the jury. As the Supreme Court said in *Western Show Co., Inc., v. Mix,* 315 Pa. 139, at page 142, 173 A. 183, at page 184: "That the jury gave a verdict for but a fraction of the sums fixed by the experts does not prove their evidence was inadmissible, but rather that the jury thereby disproved the fears defendant expressed as to the effect of receiving it." In any event, the witness appears to have been sufficiently qualified within the rule of *Western Show Co., Inc., v. Mix,* supra, to establish a reasonably safe or fair basis for the assessment of damages. It was established that he had been connected with the business of plaintiff for many years, and had been its president from the time of its incorporation in 1926. He had attended every dance conducted by plaintiff in 1939, and had made a detailed record of attendance and expenses for each of its functions. It may have affected the weight of his testimony that 1939 was the first year when a detailed written record of income and expenditure for the dance pavilion was kept, but no authority has been pointed out by appellants holding the testimony inadmissible for any such reason. If the opinion of the Supreme Court in *Western Show Co., Inc., v. Mix,* supra, is compared with the earlier opinion of the same case in 308 Pa. 215, 162 A. 667, the necessarily vague outlines of the character of testimony acceptable on questions of this sort will be found distinguished as clearly as they can be for any practical purpose. The testimony held objectionable in the earlier appeal was an estimate of damages supported apparently by only the fixed facts of the seating capacity of the circus and the scale of admissions charged, without reference to actual attendance records, the weather, the numerical drawing power of the defendant actor, or the earning capacity of the enterprise generally. In the instant case, the witness presented figures, although for only part of one season, showing at least the attendance

at a number of dances where the services of the appellants under contract with plaintiff were supplied, as compared with occasions when orchestras composed of members of the local union played, and took into consideration variations in weather conditions in the only instance where the attention of the witness was directed to that point. He also testified as to the profits of operation of the pavilion for the season previous to the one in question. Such testimony is admittedly unsatisfactory as to accuracy, as opinion evidence on such a topic inescapably is (*Western Show Co., Inc., v. Mix,* supra; *Dawson v. Pittsburgh,* 159 Pa. 317, 325, 28 A. 171), but the witness seems to have grounded his opinion within the lines described in *Western Show Co., Inc., v. Mix,* supra, and it cannot be held inadmissible. The fifth assignment of error is overruled.

Finally, appellants contend (eleventh and twelfth assignments of error) that the trial court erred in affirming certain of plaintiff's points for charge. The question covered by these assignments was not raised by appellants in the court below, and, ordinarily, as appellants here concede, it cannot be assigned for error. We do not consider the objections raised under these assignments as basic or fundamental. See *Gordon, Secretary of Banking, v. Hartford Sterling Co. et al.,* 319 Pa. 174, 177, 179 A. 234. There is no complaint that the charge as a whole did not fairly and clearly submit the issues to the jury. The eleventh and twelfth assignments of error are overruled.

Judgment is affirmed.