Western Show Company, Inc., *v.* Mix, Appellant.

Argued April 12, 1934. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*W. P. Gifford,* of *Gunnison, Fish, Gifford & Chapin,* with him *John M. Kelley,* for appellant.

*Charles H. English,* of *English, Quinn, Leemhuis & Tayntor,* for appellee.

OPINION BY MR. JUSTICE SIMPSON, May 21, 1934:

The jury have found that the defendant, Tom Mix, a well-known actor in Wild West and cowboy shows, entered into an oral contract with the plaintiff, The Western Show Co., Inc., by which, in consideration of $10,000 a week and certain accommodations to be furnished to

him, he agreed to act in plaintiff's circus daily during the season of 1929, which it was estimated would last about twenty weeks. Admittedly he did not keep his contract, but, on the contrary, entered into another agreement with a rival circus—the Sells-Floto Company, —with which he performed during the time covered by his contract with plaintiff.

The present trial was the second trial of the case, the first having been reviewed by us in an opinion reported in 308 Pa. 215. That plaintiff is entitled to recover damages from defendant for the breach of his contract cannot be doubted, and that they were substantial and not merely nominal, is also beyond cavil; but the difficulty then was, and now is, to find "a reasonably safe basis" for calculating them. We did not see then, nor do we now see, nor has appellant suggested, how they could be measured adequately, other than by proof of the probable decrease in the attendance, and hence of the receipts at plaintiff's circus, during the period covered by the broken contract. To prove this no other way seemed possible, then or now, and appellant has pointed to none, than by the calling of expert witnesses, who were familiar with the extent to which defendant was a drawing attraction, who were well acquainted with the character of plaintiff's business, and of the place or places where it was carried on. This opinion evidence is, of course, most unsatisfactory in character (Dawson v. Pittsburgh, 159 Pa. 317, 325), but defendant can hardly be heard to object to its use since he has not even suggested that there was another reasonable way open to plaintiff to prove the substantial damages it had suffered at his hands. At the first trial, for the reasons pointed out in our opinion, we decided that the testimony then given by the experts, was not sufficient to justify the acceptance of the opinions expressed by them, and we intimated therein in what respects the testimony was insufficient.

At this trial, the deficiencies in the previous evidence were properly covered, and, considering the testimony of each of the several experts as a whole, we are of opinion that it justified the expression of their opinions, as to the loss plaintiff sustained by defendant's breach of his contract. That the jury gave a verdict for but a fraction of the sums fixed by the experts does not prove their evidence was inadmissible, but rather that the jury thereby disproved the fears defendant expressed as to the effect of receiving it. It would be a useless repetition to re-state what we said before, and apply it to the facts of the case as developed on the present trial. As we have said, we are of opinion the evidence of the experts was admissible, and, this being so, admittedly it disposes of the principal question raised on this appeal.

The second question alleged to be involved is this: "If irrelevant and collateral matter is elicited [by appellant], without objection, from plaintiff's witness on cross-examination, can the plaintiff rebut such collateral matter by the testimony of other witnesses?" Appellant can hardly be heard to raise this question. The injection by it of the "irrelevant and collateral matter" into the case, left plaintiff but a single choice; it had either to offer no evidence in answer to it, and thereby risk its possible effect on the jury, which it had no way of measuring; or it could offer the rebutting evidence and take the risk of a reversal because of the doctrine now advanced by appellant. No court of justice should put a litigant to such an alternative; rather it should permit him, by means of the contradictory evidence he had on hand, to rebut, as far as he could, the erroneous evidence elicited by his antagonist. Anything short of this would not even savor of fairness.

The third and final point involved is: "Is it proper to instruct the jury that if any witness has wilfully and corruptly testified falsely to any material fact, the jury are at liberty to disregard the whole of his testimony, unless or except in so far as it is corroborated?" This

question arises primarily out of an extract from the general charge as follows: "There is a maxim of the law as old as the law itself—falsus in uno, falsus in omnibus—that is, false in one thing, false in all things; and if you believe that any witness is testifying falsely to a matter that is material to the issue, it would be your province to disregard that witness's testimony in so far as he was not corroborated by some other credible witness, and this applies to all witnesses on both sides of the case."

It may be conceded that it would have been wiser if the court below had limited itself to the scope of the maxim as expressed by us in Com. v. Ieradi, 216 Pa. 87, 88, as follows: "The maxim falsus in uno, falsus in omnibus, has modernly been relaxed and restricted in its application. The rule is that if a witness wilfully and corruptly swears falsely to any material fact in a case, the jury are at liberty to disregard the whole of his testimony: 30 Am. & Eng. Ency. of Law, 2d edition, 1072. But the correct principle goes no further than to say that the jury *may* disregard the testimony, not that they *must* disregard it. This is the form of the rule as laid down in the great majority of jurisdictions: 2 Wigmore on Evidence, page 1173."

We are not concerned, however, with the question as to the best method of expressing the principle, but whether or not reversible error was committed in the way it was expressed. We are not convinced that it was. We do not feel that the effect of the charge was to tell the jury "that they must believe a false witness in so far as he is corroborated," yet that is the sole basis of complaint on the point. In what he said the trial judge was speaking of the "testimony," not of the witness. Plaintiff might, indeed, have had better ground to complain of that charge than had defendant. Under it the jury could have reached the conclusion that it must disregard the testimony of such a witness, save in so far as he was "corroborated by some other credible witness," merely because the jury believe he testified falsely as to some

material matter, whereas the rule that they *may* disregard it does not apply unless the witness "wilfully and corruptly" swore falsely. Many witnesses swear falsely because of defect of memory or other cause not justifying the belief that they "wilfully and corruptly" do so. Moreover, the corroboration required by the charge is that of "some other *credible* witness," that is of some witness whom the jury believe to be worthy of belief, for this is the meaning of "credible." Hence, the utmost that can be said is that the trial judge told the jury that it was their "province to disregard the [false] witnesses testimony, in so far as he was not corroborated by some other......witness" whom the jury were satisfied was worthy of belief. In other words, the part of the charge complained of related to testimony the jury might consider, because it is supported by the testimony of those whom they believed to be worthy of belief; it went no further. Thus viewed, it was not objectionable, for, in any event, the jury would believe the testimony, which they thought was worthy of belief no matter from whom it came.

Moreover, we cannot properly consider the question at this time. Appellant, in his brief, says the rule was applicable to the testimony of three witnesses "Dale Kester and Mrs. Kester," and one "Darnell," yet he has not printed the testimony of any of them, so that we might consider the force of the objection. As to the first two, appellant alleges that they said they "had visited the defendant in Philadelphia on the evening when the alleged contract was supposed to have been made, and that they heard the defendant state that he had made *a* contract," whereas they "were contradicted by the records of their hotel registration in Philadelphia." As to the witness, Darnell, appellant says he "testified he was present in Philadelphia and heard the plaintiff and defendant in conversation the night of the alleged making of the contract," but that his "subsequent statements to the contrary of this, were proved." Without this evidence

in its proper setting, we cannot tell whether or not the jury would have been justified in finding that any of the witnesses was "wilfully and corruptly" testifying falsely. There is no presumption that they were, even if they were mistaken; and the fact that an error in dates may have been the only discrepancy, admonishes us that this not unusual mistake may have been far from showing wilful and corrupt testimony.

The same matter was raised in one of appellant's points, except that therein he properly qualified it with the words "wilfully and corruptly," and the answer of the trial judge was the same as that above quoted from his general charge. In considering this point and answer, what we have said about the omission of the words "wilfully and corruptly" does not apply, but sufficient remains to cause us to dismiss the assignment of error.

The judgment of the court below is affirmed.