**LAKOTA GIRL SCOUT COUNCIL, INC., Appellee,**

v.

**HAVEY FUND–RAISING MANAGE-MENT, INC., and Francis P. Havey, Appellants.**

Nos. 74–1262, 74–1263.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 10, 1974.

Decided June 27, 1975.

Robert E. Dreher, Des Moines, Iowa, for appellants.

Tito W. Trevino, Fort Dodge, Iowa, for appellee.

Before LAY, BRIGHT and WEBSTER, Circuit Judges.

WEBSTER, Circuit Judge.

Havey Fund-Raising Management, Inc., and Francis P. Havey appeal from a jury verdict and a judgment awarding damages against them for breach of a contract to provide fund-raising services to the plaintiff, Lakota Girl Scout Council, Inc. They do not challenge the jury's finding that the contract was breached, but contend instead that (1) the District Court[1] lacked personal jurisdiction over Francis P. Havey, founder and chief executive officer of Havey Fund-Raising Management, Inc.; (2) there was insufficient evidence to find Francis P. Havey liable as the alter ego of the corporation, the entity with which plaintiff Lakota Girl Scout Council, Inc., had contracted; and (3) the court erroneously allowed the jury to consider lost profits as a measure of damages and improperly admitted opinion evidence in support thereof. We affirm the judgment of the District Court.

In 1968, the Lakota Girl Scout Council decided to hold a fund-raising drive, the proceeds of which would be used to develop year-around facilities at its 175-acre campsite near Dayton, Iowa. Four professional fund-raising firms, including Havey Fund-Raising, Inc., were considered to coordinate the campaign. Havey Fund-Raising conducted a survey and informed the Council that it was feasible to raise $325,000–$350,000 for the project. The Council thereupon set its goal at $345,000 and selected Havey Fund-Raising, Inc., to assist it.

On October 1, 1968, the parties executed a contract: Havey Fund-Raising was to provide professional assistance to help the Council reach its goal in return for a fee of $28,000; the Havey firm did not guarantee that any money would in fact be raised. When Havey Fund-Raising failed to perform in accordance with the contract and the campaign fell far short of its goal, the Council instituted this action, seeking various enumerated damages.[2]

In the course of discovery, the Council determined to its satisfaction that Havey Fund-Raising, Inc., was the alter ego of Francis P. Havey and accordingly sought to join Havey as a party defendant. The District Court allowed Havey to be joined, pursuant to Fed.R.Civ.P. 20, and later denied Havey's motion to quash service for want of in personam jurisdiction.

The case was tried and submitted to a jury, which awarded the Council $35,000 in damages and, in response to a special interrogatory, found the corporation to be Havey's alter ego. The District Court

---

1. The Honorable William C. Hanson, Chief Judge, United States District Court for the Southern District of Iowa, sitting in the Northern District of Iowa.

2. See note 5 infra.

entered judgment against both defendants for $35,000, "piercing the corporate veil" of Havey Fund-Raising, Inc., on the basis of the jury's answer to the special interrogatory.

## I.

*Jurisdiction and Piercing Corporate Veil*

Because the issues of in personam jurisdiction over Francis P. Havey and piercing the corporate veil of Havey Fund-Raising, Inc., are interrelated, we will deal with them together.

■ This is a diversity case.[3] It is well established that in diversity cases a federal district court must apply the law of the forum state to determine the persons over whom it may assert in personam jurisdiction. Fed.R.Civ.P. 4(e) and (f); *see Marsh v. Kitchen*, 480 F.2d 1270 (2d Cir. 1973). The Iowa statute applicable to the instant case, I.C.A. § 617.3, provides that the execution of a contract to be performed in Iowa with a resident of Iowa makes a non-resident amenable to the jurisdiction of the Iowa courts. Appellants do not challenge the actual execution of such a contract by the corporation, nor do they contend that the procedural requirements with regard to service of process and notice were not complied with. Rather, appellants argue that Francis P. Havey, as distinguished from the corporation, lacked the minimum contacts with Iowa necessary to the assertion of in personam jurisdiction over him. *See International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). This argument is wide of the mark; if the corporation is Havey's alter ego, its contacts are his and due process is satisfied.

## A.

■ Long-arm derivative jurisdiction over a foreign parent corporation has been found where the parent so controlled and dominated the activities of its resident subsidiary that the latter's separate corporate existence was in effect disregarded. Thus, in *Fisher v. First National Bank*, 338 F.Supp. 525, 529 (S.D.Iowa), *appeal dismissed*, 466 F.2d 511 (8th Cir. 1972), Judge Stuart accurately summarized the law:

> A corporation is not doing business in a state merely by the presence of its wholly owned subsidiary. Cannon Manufacturing Co. v. Cudahy Packing Co. (1925), 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634. However, the fiction of corporate entity may be disregarded, where one corporation is so organized and controlled and its affairs are so conducted that it is, in fact, a mere instrumentality or adjunct of another corporation. Even a non-owned corporation may act as agent for another corporation. No all embracing rule has been laid down under which the relationship between two corporations may be determined. The circumstances in each case must be examined to determine whether a corporation through the activities of another corporation has subjected itself to jurisdiction in a state under its long arm statute. Frazier, III v. Alabama Motor Club, Inc. (5th Cir., 1965), 349 F.2d 456, 459; Industrial Research Corporation v. General Motors Corp. (N.D. Ohio, 1928), 29 F.2d 623, 625.

*See Karlin v. Avis*, 326 F.Supp. 1325 (E.D.N.Y.1971) (piercing the corporate veil, if only to establish jurisdiction over parent corporation, is a drastic approach authorized only in the most extreme situations); *cf. Caesar's World, Inc. v. Spencer Foods, Inc.*, 498 F.2d 1176, 1181 n.6 (8th Cir. 1974).

While we find no cases within this circuit which apply this principle to corporations which are the alter ego of a dominant individual shareholder, there is adequate support from other jurisdictions.

In *International Controls Corp. v. Vesco*, 490 F.2d 1334 (2d Cir.), *cert. denied*,

---

**3.** 28 U.S.C. § 1332. Havey Fund-Raising, Inc., is a Wisconsin corporation having its principal place of business in Milwaukee, Wisconsin; the Lakota Girl Scout Council, Inc., is an Iowa corporation having its principal place of business in Fort Dodge, Iowa. The amount in controversy, $399,000, exceeds $10,000.

417 U.S. 932, 94 S.Ct. 2644, 41 L.Ed.2d 236 (1974), the Second Circuit held that a district court could assert jurisdiction over a corporation when it had jurisdiction over its dominant shareholder by using the court's equitable power to pierce the corporate veil. In *Sheard v. Superior Court*, 40 Cal.App.3d 207, 114 Cal. Rptr. 743, 745 (1974), the court addressed the precise question here presented and said:

> Petitioners contend that since they at no time resided in the State of California and owned no property or did any business in California service upon them outside the state was ineffective to give respondent court in personam jurisdiction over them. Real party, in turn, contends that since Sheard has admitted doing business in this state and the complaint alleges that Sheard is the alter ego of petitioners, who are its stockholders, respondent court has jurisdiction over both Sheard and petitioners.
>
> With particular respect to real party's contention we observe that it has been held in this state that if a subsidiary corporation acts as an agent of the parent corporation or is so controlled by the parent as to justify disregard of the separate entity jurisdiction over the subsidiary will support jurisdiction over the parent. (Empire Steel Corp. v. Superior Court, 56 Cal.2d 823, 832, 17 Cal.Rptr. 150, 366 P.2d 502, see also Rest.2d Conflict of Laws, § 52; com. (b).) Upon analogy we are persuaded that where a corporation is the alter ego of the stockholders so as to justify disregard of the corporate entity jurisdiction over the corporation will support jurisdiction over the stockholders. (See Associated Vendors, Inc. v. Oakland Meat Co., 210 Cal.App.2d 825, 836–842, 26 Cal.Rptr. 806.)

### B.

■ Given these principles, the propriety of the District Court's assertion of jurisdiction in the instant case ultimately depends upon the propriety of its decision to pierce the corporate veil of Havey Fund-Raising, Inc.

Evidence was introduced at trial showing that (1) Francis P. Havey is and has always been the sole shareholder of Havey Fund-Raising, Inc.; (2) Havey was the firm's sole incorporator and his capital contribution was $550.00; (3) Havey, and no one else, gave loans to and borrowed money from the corporation; (4) Havey and his wife owned the building where the company was headquartered and received rental payments from the company; (5) the company purchased a Lincoln automobile for Havey's business use which Havey also used for incidental personal business. In short, the evidence was overwhelming that Havey dominated and controlled the business and treated it as his own.

■ Judge Hanson submitted a special interrogatory to the jury on this subject in which he stated that a corporation's existence is presumed to be separate, but can be disregarded if (1) the corporation is undercapitalized, (2) without separate books, (3) its finances are not kept separate from individual finances, individual obligations are paid by the corporation, (4) the corporation is used to promote fraud or illegality, (5) corporate formalities are not followed or (6) the corporation is merely a sham. In response, the jury found the corporation to be the alter ego of Francis P. Havey.

Judge Hanson's interrogatory properly enumerates the factors that may be considered in determining if a corporation is merely the alter ego of its dominant shareholder. *See* 1 W. M. Fletcher, Cyclopedia of the Law of Private Corporations § 41.3 (1974). There was ample evidence from which the jurors could find that the corporation was Havey's alter ego; their finding is supported by substantial evidence and the determination of the trial judge to hold Havey liable by piercing the veil was not an abuse of his equity power.[4]

---

**4.** The District Court's decision to exercise its equitable powers to pierce the corporate veil

and impose liability on Francis P. Havey as an individual fully comports with Iowa law and

## II.

### Damages

The evidence submitted by the Council to prove breach of contract centered upon the failure of Havey Fund-Raising to provide the degree of assistance and supervision promised. Shifting personnel, inadequate consultation and direction, and failure to provide follow-up assistance on collections were the principal derelictions. The campaign was in shambles throughout the period of the drive and fell far short of its goal of $345,000. The drive grossed $88,842.32; the Council paid $24,000 to Havey Fund-Raising, Inc., and incurred $10,000 in additional expenses.

In its complaint, the Council sought to recover for many specific items of damages.[5] The District Court submitted the damage issue to the jury only upon the theory of lost profits: "what the plaintiff would have made if the contract had been performed minus a deduction for savings made possible by the breach."[6]

Appellants contend that there was no liability under Iowa law since the receipts from the drive exceeded the expenses. This argument assumes, however, that the fact of the Council's claimed lost profits was "too uncertain for recovery," since an "expense" approach to damages is recognized as appropriate only when other measures of damages are inappropriate. See *C. C. Hauff Hardware, Inc. v. Long Manufacturing Co.*, 260 Iowa 30, 148 N.W.2d 425, 428 (1967). Our first consideration must therefore be the propriety of an award based upon lost profits under the circumstances of this case.

Under Iowa law, when a contract has been breached, the innocent party is generally entitled to be placed

---

the law enunciated by this court on the subject. See *Inn Operations, Inc. v. River Hills Motor Inn Co.*, 261 Iowa 72, 152 N.W.2d 808 (1967) (corporation is treated as an entity separate from its stockholders only where applying the corporate fiction would not accomplish some fraudulent purpose, operate as a constructive fraud or defeat some strong equitable claim); *Wescott & Winks Hatcheries v. F. M. Stamper Co.*, 249 Iowa 30, 85 N.W.2d 603 (1957) (corporate entity will be ignored only when circumstances justify it as when it is a mere sham or has been used as an instrument of fraud); *Central Fibre Products Co. v. Lorenz*, 246 Iowa 384, 66 N.W.2d 30 (1954) (corporate form properly disregarded where used as a thinly disguised cloak for shareholder's individual operation); *Wade & Wade v. Central Broadcasting Co.*, 227 Iowa 422, 288 N.W. 441 (1934) (trend of authority is to disregard corporate entity when it is so organized and controlled, and its affairs are so conducted, as to make it merely an instrumentality, agency, conduit or adjunct of another); *Wooddale, Inc. v. Fidelity and Deposit Co.*, 378 F.2d 627 (8th Cir. 1967) (where a person is simply dealing with his own property through a corporate agency as he might deal with it as an individual, the fiction is sometimes disregarded), *citing Haynes v. Kenosha St. Ry.*, 139 Wis. 227, 119 N.W. 568 (1909); *Bankers Life and Casualty Co. v. Kirtley*, 338 F.2d 1006 (8th Cir. 1964) (corporate entity will be disregarded only under exceptional circumstances such as where the corporation is a mere shell, serving no legitimate business purpose, and is being used principally as an intermediary to perpetrate

fraud or promote injustice); *Darling Stores Corp. v. Young Realty Co.*, 121 F.2d 112, 116 (8th Cir. 1941) ("courts will ignore the fiction of corporate legal entity when the circumstances justify it, and when it is used as a subterfuge to defeat public convenience, justify wrong or perpetrate a fraud"); *Farmers Feed and Supply Co. v. United States*, 267 F.Supp. 72, 76 (N.D.Iowa 1967) (Hanson, J.) (3-judge court) ("There is no evidence in this case which would justify piercing the corporate veil. * * * There is no substantial evidence to show the corporation to be a sham."). See also *Bangor Punta Operations, Inc. v. Bangor & Aroostook R.R.*, 417 U.S. 703, 94 S.Ct. 2578, 41 L.Ed.2d 418 (1974) (corporate form may be disregarded in interests of justice where it is used to defeat an overriding public policy).

---

5. The Council sought a total of $399,000 from the defendants. Its prayer was broken down as follows:

   (a) No Cookie Sale in 1969 .......... $ 11,000.
   (b) Total payment to defendant ....... 24,000.
   (c) Extra office expense ........... 10,000.
   (d) Deprived of 1969 operating funds ... 8,000.
   (e) Deprived of the use of the Lakota
       Girl Scout Camp ................ 50,000.
   (f) Deprived of an effective Campaign
       Drive for ten years, and secured
       only $29,000 in cash of a total
       of $160,000 pledged, as reported
       in defendant's Final Report,
       rather than $325,000 to $350,000 .. 269,000.
                              TOTAL    $399,000.

6. The parties agree that Iowa law is controlling on the issue of damages.

in the position he would have occupied had there been performance. *DeWaay v. Muhr*, 160 N.W.2d 454 (Iowa 1968); *C. C. Hauff Hardware, Inc. v. Long Manufacturing Co., supra.* Lost profits are recoverable under Iowa law, provided: (1) there is proof that some loss occurred, (2) that such loss flowed directly from the agreement breached and was foreseeable, and (3) there is proof of a rational basis from which the amount can be inferred or approximated. *See Orkin Exterminating Co. v. Burnett*, 160 N.W.2d 427 (Iowa 1968) (lost profits may be recovered if fact of loss is clear and uncertainty lies only in the amount, provided there is proof of a reasonable basis from which the amount can be inferred or approximated); *DeWaay v. Muhr, supra* (foreseeability is important element in lost profits cases; if uncertainty lies only in amount, recovery can be had); *Benshoof v. Reese*, 250 Iowa 868, 97 N.W.2d 297 (1959) (distinction between profits which are remote and those which are proximate is whether they are dependent on collateral engagements or are the immediate fruits of the principal contract); *Wachtel v. National Alfalfa Journal Co.*, 190 Iowa 1293, 176 N.W. 801 (Iowa 1920) (value of a chance to win a specific prize already in existence not too remote or speculative as to preclude recovery of substantial damages for breach of contract); *Creamery Package Manufacturing Co. v. Benton County Creamery Co.*, 120 Iowa 584, 95 N.W. 188 (1903) (lost profits allowed when fairly within the contemplation of the parties and loss was a direct consequence of the breach); *Rule v. McGregor*, 117 Iowa 419, 90 N.W. 811 (1902) (lost profits are too remote and speculative only when it cannot be ascertained with reasonable certainty that they have sprung from the breach alleged); *McPeek v. Western Union Telegraph Co.*, 107 Iowa 356, 78 N.W. 63 (1899) (loss of reward for capture of outlaw due to negligent failure of defendant to deliver message of outlaw's whereabouts resulted in damages not too remote for recovery). In *Shearon v.*

*Boise Cascade Corp.*, 478 F.2d 1111, 1117 (8th Cir. 1973), this court noted that "Iowa law appears to permit a flexible approach to proof of the amount of damages sustained * * *", and approved an instruction on lost profits where an exclusive dealership agreement had been breached.

### A.

■ *Fact of Loss.* At trial, evidence was admitted which tended to show that the capital fund drive, as planned and programmed by Havey Fund-Raising, with a goal of $345,000 was feasible. Indeed, Francis P. Havey himself so testified. Instead, due to the derelictions which constituted the breach, the Council grossed only $88,842.32 in a campaign which cost it at least $34,000. We think the District Judge had a sufficient basis from which to conclude as a matter of law that some damage resulted from the breach and thus properly submitted the question of lost profits to the jury for the purpose of computing damages.

### B.

■ *Proximate Cause.* While Iowa law does recognize the "new business rule" under which potential profits from an untried enterprise are deemed too speculative to afford a basis for recovery, *see City of Corning v. Iowa-Nebraska Light & Power Co.*, 225 Iowa 1380, 282 N.W. 791 (1938); *Creamery Package Manufacturing Co. v. Benton County Creamery Co., supra,* the campaign in this case differs materially from a general business enterprise. The campaign was a single venture, conducted apart from the general business operations of the Girl Scout Council. It had a specific goal to be achieved within a reasonably clear time frame. It was certainly foreseeable to defendants that a goal reasonably believed by the parties to be capable of achievement would be prejudiced by the failure of Havey Fund-Raising to provide the services contemplated by the agreement, and that such a diminished

return would be the "immediate fruit" of the breach. *See Benshoof v. Reese, supra,* 97 N.W.2d at 301. Of special significance here is the case of *Wachtel v. National Alfalfa Journal Co., supra.* Therein the Iowa Supreme Court ruled that the value of a chance to win a specific prize already in existence was not so speculative, contingent or uncertain as to limit a plaintiff's recovery to a minimal amount where defendant had deprived her of that chance by breaching its contract with her.

Collateral issues do not dominate here as they did in *Benshoof v. Reese, supra,* where diseased hogs sold by defendant prevented plaintiff from full utilization of his business and full utilization of his business might have resulted in more profits, and *Love v. Ross,* 89 Iowa 400, 56 N.W. 528 (1893), where a stallion's poor breeding performance was to an important degree dependent upon the health and condition of the mares. No evidence was offered in the instant case to cast doubt upon the Council's claim that the campaign failed solely because of Havey Fund-Raising's breach of its agreement with the Council. While evidence of extraordinary conditions, such as a severe economic depression, might have been relevant to show that the claim was remote or speculative, none was offered in this case.

### C.

Basis for Computation. Under Iowa law, the jury need not make the computation of damages with mathematical exactness. It is enough if there is proof of a rational basis for computation. *Orkin Exterminating Co. v. Burnett, supra,* 160 N.W.2d at 430; *DeWaay v. Muhr, supra.* Expert testimony was adduced at trial from which a jury might determine how much less the Council netted than it would have received with full performance by Havey Fund-Raising.

Ed Breen, a long-time resident of the area in which the campaign was conducted, who served as the campaign's general chairman, testified that he had previously worked on United Fund campaigns and chaired a Y.M.C.A. drive which netted $850,000 in the area and that the general feeling of the people involved with the campaign was that the goal would be achieved. He added that it was reasonable to expect considerable help from all the Girl Scout families in the area since Girl Scouting was not new to the area and since the camp had been in existence a long time. Breen also stated that there was a general public interest in the development of the camp.

James D. Harrison, a former campaign director and director of sales for Havey Fund-Raising, Inc., who had worked on the Lakota drive, was deposed before trial. In his deposition, which was read to the jury, he stated that in 1967 he had helped direct a Boy Scout campaign in Joliet, Illinois, which had raised over $426,000; that he had been co-director of a drive in Tacoma, Washington, which had raised its goal of about $1.5 million; and that he had directed a Boy Scout drive in Springfield, Illinois, and nine surrounding counties which had raised $18,000 more than its goal of $350,000. He added that he had indirectly participated in other drives. It was Harrison's opinion that the outcome of the campaign would have been much different if it had been handled properly. His testimony was:

Q. Based upon your experience as a director and an associate director of campaigns, as well as sales director for Havey, and based upon your almost two months as acting director of Lakota Girl Scouts Council Campaign, do you have an opinion as to what amounts of money could have been raised if the director had properly conducted the campaign?

\*   \*   \*   \*   \*   \*

A. My opinion is if we would have had a director on the scene as we so stated in the original contract, with an associate or co-director in residence at the assigned dates, that we probably would have had the success in Fort Dodge. I feel that way for two rea-

sons. No. 1, the Council itself had conducted a lot of preliminary work in building or readying itself for the campaign as I mentioned earlier. The committee of businessmen that they had there and advisors to work with, the National Council, this type of thing. They had a slide presentation which was good. It was long, but it could have been adapted as I said earlier to our purpose in the campaign. It would have been a hard campaign, not an easy one, and of course I can't —you know, again, this is my opinion, but I feel that with the proper work with the volunteers that were there in the area from the very beginning, and following that campaign time-table which we had set out originally in the contract, if that would have been followed, that there is an excellent chance that they would have achieved their goal, yes. [Evidentiary objection omitted.]

■■■■ In contesting the computation of damages, appellants challenge the admission of this expert opinion testimony. The admission of an expert's opinion on a particular subject and that expert's qualifications are matters given to the sound discretion of the trial court. An appellate court will not overrule a ruling of one of these points absent an abuse of discretion. As stated by Wigmore:

> [T]he only true criterion is: On *this subject* can a jury from *this person* receive appreciable help? In other words, the test is a relative one, depending on the particular subject and the particular witness with reference to that subject, and is not fixed or limited to any class of persons acting professionally . . . . .

VII J. Wigmore, Evidence § 1923, at 21 (1940). *See* Fed.R.Evid. 702; E. Cleary, McCormick's Handbook of the Law of Evidence § 13, at 30 n.67 (2d ed. 1972) (presumably, the judge would have a broad area of discretion under Rule 702); *Steward v. Atlantic Refining Co.,* 240 F.2d 715, 718 (3d Cir. 1957); *cf. Mears v. Olin,* No. 74–1565 (8th Cir., February 28,

1975); *Havenfield Corp. v. H & R Block, Inc.,* 509 F.2d 1262 (8th Cir. 1975); *Hoppe v. Midwest Conveyor Co.,* 485 F.2d 1196 (8th Cir. 1973).

■■■■ Where lost profits is an issue, we have expressly approved the use of expert testimony to establish the amount of the loss. In *Frank Sullivan Co. v. Midwest Sheet Metal Workers,* 335 F.2d 33 (8th Cir. 1964), we held that the testimony of a partner in a contracting firm concerning the firm's future profits had been properly admitted by the district court as a basis for the computation of damages, where the partner was an experienced contractor. Likewise, in *Fox Midwest Theatres, Inc. v. Means,* 221 F.2d 173 (8th Cir. 1955), this court said that the testimony of a theatre owner as to the amount he would have earned but for the defendant's antitrust violations was entitled to be considered as a factor in arriving at the amount of damages sustained. *See also Autowest, Inc. v. Peugeot, Inc.,* 434 F.2d 556 (2d Cir. 1970) (testimony of plaintiff's president and comptroller as to sales and profit projections for ten future years admissible to prove damages for wrongful termination of distribution franchise where guilty party agreed franchise would have continued that long). Of course, the weight to be given to such evidence is always for the jury to determine.

■■■ Finally, we note that expert opinion testimony has been deemed competent in at least one other case where a unique promotional venture did not lend itself to any other reasonable basis for computing damages. In *Riley v. General Mills, Inc.,* 226 F.Supp. 780 (E.D.Pa. 1964), *rev'd on other grounds,* 346 F.2d 68 (3d Cir. 1965), insurance agents brought an action against General Mills, claiming that the abortive termination of a free gift promotional program had cost them profits which would otherwise have been earned. Damages for lost profits were assessed by the district court which held:

> Therefore, *considering the nature of the instant transaction* which was a *unique* promotional venture we find

that one reasonable source for computing the damages rests with the opinion testimony of expert witnesses. Where there is no other "reasonably safe basis" for measuring the substantial damages which the plaintiff has suffered by reason of the defendant's breach of his contract, expert testimony may be utilized for the purpose. *Western Show Company Inc. v. Mix*, 315 Pa. 139, 141, 173 A. 183 (1934). 226 F.Supp. at 783. While reversing the district court (on the basis of insurance laws), the Third Circuit expressly approved the trial court's approach to computation of damages. 346 F.2d at 72. We think this approach was warranted in the instant case. "[A] defendant whose wrongful conduct has rendered difficult the ascertainment of the precise damages suffered by the plaintiff, is not entitled to complain that they cannot be measured with the same exactness and precision as would otherwise be possible. * * * The wrongdoer should bear the risk of uncertainty that his own conduct has created." *Autowest, Inc. v. Peugeot, Inc., supra,* 434 F.2d at 565, *citing Eastman Kodak Co. v. Southern Photo Materials Co.,* 273 U.S. 359, 379, 47 S.Ct. 400, 71 L.Ed. 684 (1929), *and Bigelow v. RKO Radio Pictures, Inc.,* 327 U.S. 251 264–65, 66 S.Ct. 574, 90 L.Ed. 652 (1946).

As summarized by Professor Corbin:

It is not possible to state the precise degree of approach to certainty required by the recovery of profits as damages for breach of contract. If the mind of the court is certain that profits would have been made if there had been no breach by the defendant, there will be a greater degree of liberality in allowing the jury to bring in a verdict for the plaintiff, even though the amount of profits prevented is scarcely subject to proof at all. In

this respect, at least, doubts will generally be resolved in favor of the party who has certainly been injured and against the party committing the breach. The trial court has a large amount of discretion in determining whether to submit the question of profits to the jury; and when it is so submitted, the jury will also have a large amount of discretion in determining the amount of its verdict.

5 Corbin on Contracts § 1022 (1964).

### D.

▮▮▮ *Instructions.* Having concluded that there was sufficient evidence and that it was permissible under Iowa law to submit the issue of lost profits to the jury, we must finally consider whether the instructions allowed the jury to speculate or permit a recovery under an erroneous standard. The District Judge instructed that before damages for lost profits could be awarded the jury must first find (1) that the injury was foreseeable as a probable result of the breach when the contract was made, (2) that the evidence afforded a sufficient basis for estimating the amount with reasonable certainty, although exact proof was not required, and (3) that lost profits must not be speculative or conjectural. The District Judge thus accurately and completely set forth the requirements and limitations for an award of damages for lost profits under the law of Iowa, discussed *supra.*[7]

We have dealt at length with the issue of damages because it is important to understand the narrow holding upon which this opinion rests. Not every promotional venture gone astray may be redeemed by resort to lost profits as a measure of damages. In this case we hold for the reasons stated that the Dis-

---

7. It was suggested during oral argument that the charge permitted the jury to award damages both for expenses incurred and for unrealized receipts. We disagree. The District Court correctly and clearly instructed the jury that "profits are the net pecuniary gain for a transaction, that is to say, the gross pecuniary gain reduced by the cost of obtaining it." The

court also instructed the jury that plaintiff could recover "in accordance with this instruction" the amount in excess of $88,842.32 which would have been "raised" but for the breach. The term "raised," if calculated "in accordance with these instructions," taken as a whole, could only have meant "net" to the Council.

trict Court did not err in submitting the issue to the jury. Since the award was within the range of the evidence and the limiting instructions, the verdict and the judgment must stand.

BRIGHT, Circuit Judge (dissenting).

I respectfully dissent. The claim for lost profits in a case of this kind rests upon pure speculation alone. The trial court should not, for at least two reasons, have submitted this issue to the jury.

First, the expert testimony in the instant case was conjectural and speculative. Two experts, whose qualifications to offer an opinion on the matter were, at best, dubious, testified as to lost profits. Ed Breen, the general chairman of the Girl Scouts' campaign, testified that, based upon his experience in United Fund campaigns and a Y.M.C.A. drive and upon his belief that the community generally supported the Girl Scouts, the goal of $345,000 was attainable. He grounded his opinion that widespread public support existed for the drive principally upon his view that the families of Girl Scouts would contribute and that "supporting the Girl Scouts * * * [is] like supporting motherhood." The record shows that local sponsors of the fund campaign were less than generous in their contributions, however, and that Breen admitted to no prior experience with drives in support of Girl Scouts.

Moreover, the deposition of James D. Harrison, which was read to the jury, discloses that Harrison, as the only other expert witness on the question of damages, had never participated in any fundraising drives in the Fort Dodge area and had never participated in such drives for the Girl Scouts anywhere. His opinion as to what might have been raised in this community was extrapolated from his experience in communities in Illinois and Washington.

In short, the conclusion of both Breen and Harrison that the Lakota Girl Scout Council campaign could gross $345,000 if properly managed reflected a hoped-for result and rested entirely upon speculation about the receptiveness of the Fort Dodge community to such a campaign. No such campaign had been undertaken in the community previously, and it was consequently, impossible for any witness, including Breen or Harrison, to testify with any degree of accuracy to its likelihood of success.

Second, Iowa adheres to the "new business rule," which precludes recovery of lost profits by an enterprise that has no operating history from which profits may be accurately projected. See *City of Corning v. Iowa-Nebraska Light & Power Co.*, 225 Iowa 1380, 282 N.W. 791, 796 (1938) (dictum); *Creamery Package Mfg. Co. v. Benton County Creamery Co.*, 120 Iowa 584, 95 N.W. 188, 189 (1903). There is no justification for importing authority from other jurisdictions in support of the position that the Iowa courts, if this diversity case had been brought before them, would waive the "new business rule" on these facts. The opposite is more likely true, for, in contradistinction to *Wachtel v. National Alfalfa Journal Co.*, 190 Iowa 1293, 176 N.W. 801 (1920), a case, cited by the majority, in which the Iowa Supreme Court allowed recovery of prize money where the amount of the prize was fixed in advance of the plaintiff's participation in the contest and the plaintiff's entitlement to the prize was established to a virtual certainty, the very existence of damages in the form of lost profits is, in the instant case, highly questionable. Where "it is speculative and uncertain whether damages have been sustained, recovery * * * [should be] denied." *DeWaay v. Muhr*, 160 N.W.2d 454, 460 (Iowa 1968).

The amount of the jury award demonstrates the speculative nature of the damages. Although the award does not, in light of the damages actually proved but not submitted to the jury, appear wholly unreasonable,[8] it cannot be reconciled with the testimony relied upon to

8. The Lakota Girl Scout Council justifiably could claim as damages all or part of $24,000 paid to the promoter-appellant for his services and all or part of $10,000 for extra office expense incurred in connection with the fund drive.

support the judgment, for, if that testimony had been believed or given credence, the award would have been at least $96,000—the difference between the campaign goal of $345,000 and $160,000 pledged plus $89,000 realized.

I would reverse and remand this case for a new trial on the issue of damages.