**REFCO, INC., Appellee,**

v.

**FARM PRODUCTION ASSOCIATION, INC., Kenneth Lance, Appellant.**

**No. 86–2587.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 16, 1987.

Decided April 12, 1988.

G. Alan Wooten, Ft. Smith, Ark., for appellant.

Elizabeth J. Robben, Little Rock, Ark., for appellee.

Before FAGG and MAGILL, Circuit Judges, and ROSS, Senior Circuit Judge.

ROSS, Senior Circuit Judge.

## I.

Appellant Kenneth Lance, President of Farm Production Association, Inc. (Farm Production), appeals from an order of the district court[1] finding him individually liable for a $191,846.06 debit in a commodities trading account with appellee Refco, Inc. Lance raises two principal issues on appeal.[2] First, he argues that Refco's claim seeking recovery of the entire debit amount is barred by Arkansas' five-year statute of limitations. Second, he contends that the district court's factual finding that the account agreement was executed by Lance as an individual, and not as a representative of the corporation, is clearly erroneous. Lance maintains that the commodities trading in the account was for the benefit and risk of Farm Production and denies that he had any personal responsibility for the debit.

After carefully considering the record, together with the briefs and arguments of the parties, we affirm the decision of the district court.

## II.

The principal facts in this case are not in dispute. In September, 1966, Farm Production was incorporated under the laws of the State of Arkansas by William Keeton and Hubert L. Burch. The stated purpose of the corporation was to buy and sell agricultural products. By June, 1977, Robert L. Bone had acquired 85% of the stock in Farm Production; the remaining stock was owned by William Keeton. When Keeton died in 1978, the corporation bought his remaining shares.

On June 21, 1977, for the sum of $255, appellant Kenneth Lance, a long-time personal friend of Robert Bone, purchased all of Bone's stock in Farm Production and at the same time executed an option granting Bone the right to repurchase all of Lance's stock in the corporation for $255. This stock option was never exercised by Bone.

On June 16, 1977, several days prior to Lance's purchase of the Farm Production stock, a Corporation Account Agreement and Resolution was executed by Lance on a Refco, Inc. form (ostensibly in the name of "Farm Production *Associates,* Inc.") authorizing Lance, as president of the corporation, and Nell Lance, his wife, as secretary of the corporation, to trade commodities futures with Refco, Inc. On June 17, 1977, a Refco document entitled "Authorization to Transfer Funds" was executed and signed by "Farm Production Assoc. Inc., Ken Lance, Pres." There were no minutes of the corporation reflecting Lance's claimed election as president.

On October 19, 1977, Lance opened a commodities futures trading account with Refco, Inc. in the name of "Farm Products

---

1. The Honorable Henry Woods, United States District Judge for the Western District of Arkansas.

2. In his brief, appellant also raised a third issue regarding the burden of proof for a fraud claim under the laws of the State of Arkansas. At oral argument, however, appellant withdrew this argument and accordingly we do not address it here.

Assoc." The accompanying customer's agreement was executed by "Kenneth Lance" individually, with nothing to indicate Lance was signing as a corporate officer. The account executive who assisted Lance in opening the account at the Springdale, Arkansas Refco office was Robert Bone.[3]

In September, 1977, Robert Bone was suspended by the Commodity Futures Trading Commission from handling customer accounts for thirty days, and following that suspension for the next eleven months Bone was suspended from trading commodities on his own behalf. Lance testified at trial that he purchased the Farm Production stock because Bone needed to dispose of the company due to the trouble Bone was then having with the Commodity Futures Trading Commission.

Lance testified that from October, 1977, throughout the life of the account Robert Bone was allowed to make all the trading decisions of the commodities account. Although not an officer, shareholder or employee of the corporation, Bone received all of the profits from the commodities account. When the commodities trading resulted in a profit, Lance would deposit the margin return check in the Farm Production corporate account and then write a corresponding check to Robert Bone from the same account. At some point during Lance's ownership of the stock in Farm Production, Lance borrowed $7,500 from the corporation as indicated by the corporate tax returns. There was never any formal document evidencing that indebtedness, nor has the loan ever been repaid.

In October, 1979, substantial debits resulted when live cattle futures contracts were liquidated. Open positions existed in the account through October 17, 1979. On October 15, 1979, open positions in soybean futures were closed out at a profit, and on October 17, 1979, live cattle futures contracts were closed out at a loss. The account documents reflect credits and debits

relating to these transactions. Additional costs were incurred and debits made to the Farm Production account through January, 1980. At that time, the final debit balance in the account was $191,841.06.

On October 5, 1984, Refco filed suit against Lance for payment of the entire debit balance. The district court entered judgment for Refco finding that the customer's agreement was executed by Lance individually and not as an officer of the corporation. The court further determined that Lance and Bone fraudulently used the corporation as a front to allow Bone to trade commodities, notwithstanding his suspension by the Commodity Futures Trading Commission. Finally, the court found that Lance's account with Refco was an "open market account" and that open positions existed and transactions occurred in the account after October 4, 1979. The court determined, therefore, that Refco's complaint, filed on October 5, 1984, was not barred by Arkansas' five-year statute of limitations, and concluded that Lance was individually liable to Refco for the full amount of the debit balance.

### III.

#### A. Statute of Limitations

■ The parties agree that the appropriate statute of limitations period under Arkansas law is five years. Ark.Stat.Ann. § 37–209 (Repl.1962), *amended and recodified at* Ark.Code Ann. § 16–56–111(a) (1987). The parties disagree, however, as to the proper accrual date of Refco's cause of action. The basis of their disagreement stems from their disparate characterization of the commodities trading account at issue. The classification of the account is significant in determining the accrual date of this cause of action.

On the one hand, Lance argues that the account is an "open account" and that each transaction occurring within the account must be treated separately for statute of limitations purposes. Lance likens the ac-

---

**3.** It is significant to note that in dealing with Refco, Lance used several different alleged corporate names: "Farm Products Assoc."; "Farm Production Assoc."; and "Farm Production Associates, Inc." None of these matched the legal name of the corporation which was "Farm Production Association, Inc."

count in the present case to that considered by the Arkansas Supreme Court in *Boatner v. Gates Bros. Lumber Co.*, 224 Ark. 494, 275 S.W.2d 627 (1955). *Boatner* involved a building contractor who purchased building supplies from a lumber company on credit. The lumber company used a separate ledger page for each of the contractor's various jobs, although the contractor received a consolidated bill at the end of each month. The court held that "the statute of limitations runs separately from the due date of each item in an open account like this one." *Id.* 275 S.W.2d at 628.

Relying on *Boatner*, Lance argues that the commodities account in the present case consisted of separate, unrelated transactions and that each transaction closed, and any potential cause of action accrued, when either a buy or sell order was entered. Because Refco's cause of action was not filed until October 5, 1984, Lance argues that Refco is entitled to recovery only for those transactions occurring after October 4, 1979, which Lance contends amounts to a debit balance of $74,300. According to Lance, the statute of limitations serves to bar recovery on all claims relating to transactions which occurred before this time. Although Lance concedes that there were other debits to the account after October 4, 1979, he argues that these resulted from the October 3, 1979, live cattle sale and were simply posted later as the charges from the Chicago Mercantile Exchange were billed.

Refco, on the other hand, argues that the account is correctly classified as a "mutual open account" and that under Arkansas law any claim on this type of account accrues on the day the last item in the account is proved. Ark.Stat.Ann. § 37–215 (Repl.1962), *amended and recodified at* Ark.Code Ann. § 16–56–127 (1987).[4] Under this classification, Refco's claim for recovery of the entire debit amount would not be time-barred since open positions existed and both debits and credits were posted to

the account after October 4, 1979, well within the limitations period.

The district court failed to clearly state whether it considered the account a mutual or an open account. In its opinion, the court stated, "[t]he account here is an open market account. Open positions existed and transactions occurred in the account after October 4, 1979." The court concluded that the action by Refco was not barred by the statute of limitations and that Refco was entitled to a judgment against Lance in the amount of $191,841.06, the full amount of the commodities account debit.

Although the court does not specifically describe the commodities account as a mutual account, it is clear from the entry of judgment in favor of Refco for the full amount of the account debit and the significance the court placed on the fact that transactions continued to occur in the account after October 4, that the court considered the account a mutual open account.

We agree with the district court's implied conclusion that the commodities account with Refco was a mutual open account as defined by Arkansas case law. Under the agreement, if Lance made a profitable trade, he could demand money from Refco, whereas if the trade resulted in a loss, Refco could demand money from Lance. The result of each trade was offset either as a debit or credit against the existing balance in the account. The commodities account agreement contained the "expressed or implied understanding that [the parties'] respective claims shall, upon settlement, be offset to the extent of the smaller claim." *St. Francis Valley Lumber Co. v. Orcutt*, 174 Ark. 282, 295 S.W. 713, 715 (1927). Because open positions existed and transactions were made after October 4, 1979, the statute of limitations did not serve to bar claims on any of the individual transactions in the account.

**B. Lance's Individual Liability**

 Lance argues that the district court erred in its determination that Lance

---

4. Ark.Stat.Ann. § 37–215 (Repl.1962) provides: In actions (of debt, account or assumpsit) brought to recover any balance due upon a mutual open account current, the cause of

action shall be deemed to have accrued from the time of the last item proved in such account.

signed the account agreement in a nonrepresentative capacity and that he was personally liable for the account debit. Lance contends that Refco had in its files two documents which provided notice that Lance was signing the account agreement in his corporate capacity. First, the Refco file contained a Farm Production Associates, Inc. corporate resolution authorizing Lance to trade commodities futures with Refco and, second, the file contained an Authorization to Transfer Funds signed by "Farm Production Assoc. Inc., Ken Lance, Pres."

More significant to the determination of whether Lance assumed personal responsibility for the commodities account is the commodities trading customer's agreement itself. On October 19, 1977, Lance executed this agreement in his own name with no indication that he was signing the agreement in a representative capacity. The agreement provided:

> [t]he undersigned, ["Kenneth Lance"] undertakes, at any time upon your demand, to discharge obligations of the undersigned to you, or, in the event of a closing of any account of the undersigned in whole or in part to pay you the deficiency, if any.

The plain language of the account agreement supports the district court's conclusion that Lance agreed to personal responsibility under the agreement, including the payment of any debit balance.

In the alternative, we are also persuaded that "piercing the corporate veil" and attaching liability to the sole stockholder is appropriate in this case given the undercapitalization of the corporation, the failure to maintain corporate records, and Lance's testimony that the use of the corporation relating to the commodities account was for the sole purpose of allowing Robert Bone to trade commodities in violation of his suspension by the Commodity Futures Trading Commission. *See Lakota Girl Scout Council, Inc. v. Harvey Fund-Raising Management, Inc.*, 519 F.2d 634, 638 (8th Cir.1975). The use of the corporation in this manner was merely a pretext for the illegal purpose of contravening the Commission's ruling.

We conclude that the district court did not err in finding Lance personally liable for the entire balance of $191,841.06. Accordingly, the judgment of the district court is affirmed.